**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA SHIPLEY and MOSIMA NAMATA, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC,<br><br>Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT FOR INVASION OF PRIVACY; INTRUSION UPON SECLUSION; WIRETAPPING IN VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT (CALIFORNIA PENAL CODE § 631); USE OF A PEN REGISTER IN VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT (CALIFORNIA PENAL CODE § 638.51); COMMON LAW FRAUD, DECEIT AND/OR MISREPRESENTATION; AND UNJUST ENRICHMENT<br><br>JURY TRIAL DEMANDED |

# TABLE OF CONTENTS


INTRODUCTION ..... 3

THE PARTIES ..... 5

JURISDICTION AND VENUE ..... 5

FRAUDULENT CONCEALMENT AND TOLLING ..... 5

SUBSTANTIVE ALLEGATIONS ..... 6

A. Defendant Programmed the Website to Include Third-Party Resources that Utilize Cookie-Based Tracking Technologies. 6

B. Defendant Falsely Informed Users That They Could Reject the Website's Use of "All" Cookies. 24

C. The Private Communications Intercepted and Collected Through Third-Party Cookies on Defendant's Website. 44

1. Facebook Cookies. ..... 44

2. Google Cookies. ..... 48

3. Adobe Cookies. ..... 55

4. Microsoft Bing Cookies. ..... 58

5. Microsoft Clarity Cookies. ..... 59

6. Taboola Cookies. ..... 61

7. Additional Third-Party Cookies. ..... 62

D. The Third Parties Intercept User Communications While in Transit. 68

E. The Signaling and Addressing Information Intercepted by the Third Parties. 72

F. The Private Communications Collected are Valuable. 73

PLAINTIFFS' EXPERIENCES ..... 74

CLASS ALLEGATIONS ..... 80

CAUSES OF ACTION ..... 82

First Cause of Action: Invasion of Privacy 82

Second Cause of Action: Intrusion Upon Seclusion 84

Third Cause of Action: Wiretapping in Violation of the California Invasion of Privacy Act (California Penal Code § 631) 86

Fourth Cause of Action: Use of a Pen Register in Violation of the California Invasion of Privacy Act (California Penal Code § 638.51) 89

Fifth Cause of Action: Common Law Fraud, Deceit and/or Misrepresentation 91

Sixth Cause of Action: Unjust Enrichment 94

PRAYER FOR RELIEF ..... 96

Plaintiffs Tricia Shipley and Mosima Namata (collectively, "Plaintiffs") bring this action on behalf of themselves, the general public, and all others similarly situated against Zuffa, LLC ("Defendant" or "UFC"). Plaintiffs' allegations against Defendant are based on information and belief and the investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based on their personal knowledge.

## INTRODUCTION

1. This Class Action Complaint concerns egregious violations of consumer privacy and breach of consumer trust in violation of California law. When consumers visit Defendant's website (www.ufc.com, the "Website"), Defendant displays to them a popup cookie consent banner. Defendant's cookie banner discloses that the Website uses cookies but expressly gives users the option to control how they are tracked and how their personal data is used. Defendant assures visitors that they can choose to "Reject All" cookies, as shown in the following screenshot of the Website's cookie consent banner:




2. Like most internet websites, Defendant designed the Website to include resources and programming scripts from third parties that cause those parties to place cookies and other similar tracking technologies on visitors' browsers and devices and/or transmit cookies along with user data. Unlike many websites, however, Defendant affirmatively represented that users could browse the Website without being tracked, followed, or targeted by third-party data brokers and advertisers. Those representations were false.

3. Even after users elect to "Reject All" cookies, Defendant nonetheless caused

multiple third parties—including Meta Platforms, Inc. (Facebook), Google LLC (DoubleClick, Google Analytics, and YouTube), Adobe Inc. (dpm.demdex.net), Microsoft Corporation (Microsoft Bing, Microsoft Clarity, and AppNexus), Taboola, Inc., PubMatic, Inc., The Trade Desk, Inc. (adsrvr.org), Comscore, Inc. (Scorecard Research), Amazon.com, Inc., Yahoo, Inc., Magnite, Inc. (Rubicon Project), Index Exchange, Inc. (Casale Media), OpenX Technologies, Inc. (Openx.net), Oracle Corporation (BlueKai), StackAdapt Inc., and *many* others—to place and/or transmit cookies that tracked users' website browsing activities and enabled the Third Parties to intercept users' private communications on the Website (the "Third Parties").

4. Contrary to users' express rejection of cookies and tracking technologies on the Website, Defendant caused cookies, including the Third Parties' cookies, to be sent to Plaintiffs and other visitors' browsers, stored on their devices, and intercepted by the Third Parties along with user data. These cookies permitted the Third Parties to track and collect data in real time regarding Website visitors' behaviors and communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data—including whether a user is located in California.

5. The Third Parties analyze and aggregate this user data across websites and time for their own purposes and financial gain, including creating consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics; creating audience segments based on shared traits (such as Millennials, Californians, tech enthusiasts, etc.); and performing targeted advertising and marketing analytics. Further, the Third Parties share user data and/or user profiles to unknown parties to further their financial gain.

6. This type of tracking and data sharing is exactly what the Website visitors sought to avoid when they clicked or selected the "Reject All" button on the Website's cookie consent

banner. Defendant falsely told Website users that it respected their privacy choices and would refrain from tracking and data sharing when users rejected cookies. Despite receiving clear notice of users' lack of consent, Defendant ignored those choices and violated state statutes and tort duties owed to Plaintiffs and those similarly situated Website users.

## THE PARTIES

7. Plaintiff Tricia Shipley is, and was at all relevant times, an individual and resident of Forestville, California. Plaintiff Shipley intends to remain in California and makes her permanent home there.

8. Plaintiff Mosima Namata is, and was at all relevant times, an individual and resident of San Jose, California. Plaintiff Namata intends to remain in California and makes his permanent home there.

9. Defendant Zuffa, LLC d/b/a Ultimate Fighting Championship or UFC is a Nevada limited liability company with its headquarters and principal place of business in Las Vegas, Nevada.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different states.

11. The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and services provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

12. Further, the Private Communications and data that Defendant causes to be intercepted by the Third Parties are routed through servers located in California.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

14. Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## FRAUDULENT CONCEALMENT AND TOLLING

15. The delayed discovery rule applies to Plaintiffs' and the Class members' claims. Plaintiffs and Class members were unaware that, despite declining or rejecting all cookies in the Website's popup cookie consent banner, Defendant nonetheless caused third-party cookies to be sent to their browsers, stored on their devices, and intercepted by the Third Parties along with their private user data. Plaintiffs and Class members could not reasonably have discovered this conduct at the time of their visits to the Website because it occurred through hidden, technical processes not visible to ordinary users. Nothing about Plaintiffs' or Class members' experiences on the Website would have alerted a reasonable user that their selections were not being honored. Plaintiffs and Class members lacked the technical expertise and specialized tools necessary to determine whether the Website honored their opt-out selections or instead continued transmitting their data notwithstanding their selections. Plaintiffs did not discover Defendant's conduct until a later investigation revealed it.

16. On or about November 14, 2023, Plaintiff Namata notified Defendant that it was engaging in the conduct alleged herein, including causing third-party cookies and corresponding user data to be stored on consumers' devices and intercepted by third parties despite users' rejection of all cookies. Despite receiving actual notice of these practices, Defendant continued engaging in them without disclosing to users that third-party cookies and corresponding data

transmissions persisted after users rejected all cookies.

17. Despite exercising reasonable diligence, Plaintiffs and Class members were unaware of Defendant's conduct because Defendant affirmatively represented that users could decline or reject all cookies in the Website's popup cookie consent banner, while simultaneously concealing that such tracking would occur regardless of users' selections. This combination of misrepresentation and omission prevented Plaintiffs and Class members from discovering their claims earlier. These circumstances, including Defendant's concealment and misleading representations, warrant tolling of the statute of limitations.

## SUBSTANTIVE ALLEGATIONS

### A. Defendant Programmed the Website to Include Third-Party Resources that Utilize Cookie-Based Tracking Technologies.

18. Every website, including the Website, is hosted by a server that sends and receives communications in the form of HTTP requests, such as "GET" or "POST" requests, to and from Internet users' browsers. For example, when a user clicks on a hyperlink on the Website, the user's browser sends a "GET" request to the Website's server. The GET request tells the Website server what information is being requested (e.g., the URL of the webpage being requested) and instructs the Website's server to send the information back to the user (e.g., the content of the webpage being requested). When the Website server receives an HTTP request, it processes that request and sends back an HTTP response. The HTTP request includes the client's IP address, which allows the Website server to identify the origin of the request and return the response.

19. An IP address (Internet Protocol address) is a unique numerical label assigned to each device connected to a network that uses the Internet Protocol for communication, typically expressed as four sets of numbers separated by periods (e.g., 192.168.123.132 for IPv4 addresses). IP addresses can identify the network a device is on and the specific device within that network.

Public IP addresses used for internet-facing devices reveal geographical locations, such as country, city, or region, through IP geolocation databases.

20. As a result, Defendant knew or should have known that the devices used by Plaintiffs and Class members to access the Website were located in California.

21. Defendant voluntarily integrated "third-party resources" from the Third Parties into its Website programming. "Third-party resources" refer to tools, content or services provided by third parties, such as analytics tools, advertising networks, or payment processors, that a website developer utilizes by embedding scripts, styles, media, or application programming interface (API) into the website's code. Defendant's use of the third-party resources on the Website is done so pursuant to agreements between Defendant and those Third Parties.

22. The Website causes users' devices to store and/or transmit both first-party and third-party tracking cookies. Cookies are small text files sent by a website server to a user's web browser and stored locally on the user's device. As described below, cookies generally contain a unique identifier which enables the website to recognize and differentiate individual users. Cookie files are sent back to the website server along with HTTP requests, enabling the website to identify the device making the requests, and to record a session showing how the user interacts with the website.

23. First-party cookies are those that are placed on the user's device directly by the web server with which the user is knowingly communicating (in this case, the Website's server). First-party cookies are used to track users when they repeatedly visit the same website.

24. A third-party cookie is set by a third-party domain/webserver (e.g., www.facebook.com, www.google.com, dpm.demdex.net, etc.). When the user's browser loads a webpage (such as a webpage of the Website) containing embedded third-party resources, the third parties' programming scripts typically issue HTTP commands to determine whether the third-

party cookies are already stored on the user's device and to cause the user's browser to store those cookies on the device if they do not yet exist. Third-party cookies include an identifier that allows the third-party to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions.

25. As described further below, the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are intercepted by the Third Parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant, including the following:

- **Browsing History**: Information about the webpages a Website user visits, including the URLs, titles, and keywords associated with the webpages viewed, time spent on each page, and navigation patterns;
- **Visit History**: Information about the frequency and total number of visits to the Website;
- **Website Interactions:** Data on which links, buttons, or ads on the Website a user clicks;
- **User Input Data**: The information the user entered into the Website's form fields, including search queries, the user's name, age, gender, email address, location, and/or payment information;
- **Demographic Information**: Inferences about age, gender, and location based on browsing habits and interactions with Website content;
- **Interests and Preferences**: Insights into user interests based on the types of Website content viewed, products searched for, or topics engaged with;
- **Shopping Behavior**: Information about the Website products viewed or added to shopping carts;

- **Device Information**: Details about the Website user's device, such as the type of device (mobile, tablet, desktop), operating system, and browser type;
- **Referring URL**: Information about the website that referred the user to the Website;
- **Session Information**: Details about the user's current Website browsing session, including the exact date and time of the user's session, the session duration and actions taken on the Website during that session;
- **User Identifiers**: A unique ID that is used to recognize and track a specific Website user across different websites over time; and/or
- **Geolocation Data**: General location information based on the Website user's IP address or GPS data, if accessible, including whether the user is located in California.

(Collectively, the browsing activities and private communications listed in the bullet points above shall be referred to herein as "Private Communications").

26. Third-party cookies can be used for a variety of purposes, including (i) analytics (e.g., tracking and analyzing visitor behavior, user engagement, and effectiveness of marketing campaigns); (ii) personalization (e.g., remembering a user's browsing history and purchase preferences to enable product recommendations); (iii) advertising/targeting (e.g., delivering targeted advertisements based on the user's consumer profile (i.e., an aggregated profile of the user's behavior, preferences, and demographics); and (iv) social media integration (e.g., enabling sharing of users' activities with social media platforms). Ultimately, third-party cookies are utilized to enhance website performance and generate revenue through data collection and targeted advertising.

27. Defendant operates the Ultimate Fighting Championship ("UFC"), a mixed martial arts organization that produces, promotes, and organizes mixed martial arts events and related entertainment content. Defendant also owns and operates the Website, which allows visitors to, among other things, obtain information regarding UFC events, fighters, rankings, and results; view schedules and other event information; access videos and other UFC content; obtain information regarding upcoming and past fights; purchase or obtain access to UFC events and video content; and purchase UFC-branded merchandise. As users interact with the Website—including by searching for fighters, events, or other content, viewing particular fights and videos, entering information into forms, selecting content or merchandise, clicking links, and navigating webpages—they communicate Private Communications to Defendant, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data—including whether a user is located in California.

28. Defendant chose to install or integrate its Website with resources from the Third Parties that, among other things, use cookies and related tracking technologies. Thus, when consumers visit the Website, both first-party cookies and third-party cookies are placed on their devices and/or transmitted. This is caused by software code that Defendant incorporates into its Website, or that Defendant causes to be loaded. Because Defendant controls the Website's software code, and is capable of determining whether a user is accessing the Website from California, it has complete control over whether first-party and third-party cookies are placed on its California users' devices and/or intercepted by the Third Parties.

29. Defendant explained the third-party cookies it used on the Website as follows in its Cookie Policy:

**Cookies and other Web-based Tracking Technologies**

We (or our service providers) may use different technologies such as cookies, web beacons, pixels, or other types of small files or web-based tracking technologies to gather certain information. Cookies are small pieces of text. They are provided by most websites and stored by your web browser on the computer, phone, or other device that you are using. Cookies allow the website to "remember" your actions or preferences over time. Web beacons and pixel tags are electronic images and embedded scripts that may be used on our sites or in our emails. We use these technologies, for example, to deliver cookies, count visits, understand usage of our sites, analyze the effectiveness of site features and campaigns, and tell if an email has been opened and acted upon.

**Types of cookies**

A cookie can be classified by its lifespan and the domain to which it belongs. As to lifespan, a cookie is either:

- a session cookie, which is erased when the user closes the browser, or
- a persistent cookie, which remains on the user's computer/device for a period of time determined by the party that set the cookie

As for the domain to which a cookie belongs, a cookie may be:

- a first-party cookie, which is set by the web server of the web page the user is visiting, or
- a third-party cookie, which is set by a different domain (this can happen when a web page references a file located outside its domain)

Cookies and similar technologies do not require your consent to this policy when they are strictly necessary to provide services to you—for example, when a cookie is used to provide required data protection to secure our website, or to keep track of your selections or input, such as a form you are filling out, or language preference.

**Types of cookies we use**

Strictly Necessary: These cookies are necessary for the website to function and cannot be switched off in our systems. They are usually only set in response to actions made by you which amount to a request for services, such as setting your privacy preferences, logging in or filling in forms. You can set your browser to block or alert you about these cookies, but some parts of the site will not then work.

Analytics and Performance: We make use of analytic cookies to analyze how our visitors use our website and to monitor website performance. This allows us to provide a high-quality experience by customizing our offering and quickly identifying and fixing any issues that arise. For example, we might use performance cookies to keep track of which pages are most popular, which method of linking between pages is most effective, and to determine why some pages are receiving

> error messages. We might also use these cookies to highlight site services that we think will be of interest to you based on your usage of the website.
>
> Website Functionality: These cookies enable the Website to provide enhanced functionality and personalization. They may be set by us or by third party providers whose services we have added to our pages. For example, to remember choices you make (language or the region you are in), or to recognize the platform from which you access the website, and to provide enhanced and more personal features. If you do not allow these cookies, then some or all of these services may not function properly. These cookies are not used to track your browsing on other sites.
>
> Advertising: Advertising cookies are used to collect information about the browsing habits associated with your device and are used to make advertising more relevant to you and your interests. These cookies may be set through our site by our advertising partners. They may be used by those companies to build a profile of your interests and show you relevant adverts on other sites. They do not store directly personal information but are based on uniquely identifying your browser and internet device. If you do not allow these cookies, you will experience less targeted advertising….[1]

30. Defendant further explained the categories of third-party cookies it used on the Website as follows in its "Privacy Preference Center," which was accessible to users who clicked the "Cookie Settings" button in the popup cookie consent banner.

[1] Zuffa, LLC Cookie Policy (as it appeared on 7/9/2026) (available at https://www.ufc.com/cookiepolicy) (the "Cookie Policy"). Based on information and belief, this version was in effect at the time of Plaintiffs' rejections of cookies on the Website.


UFC
Privacy Preference Center
When you visit any website, it may store or retrieve information on your browser, mostly in the form of cookies. This information might be about you, your preferences or your device and is mostly used to make the site work as you expect it to. The information does not usually directly identify you, but it can give you a more personalized web experience. Because we respect your right to privacy, you can choose not to allow some types of cookies. Click on the different category headings to find out more and change our default settings. However, blocking some types of cookies may impact your experience of the site and the services we are able to offer.
Manage Consent Preferences
Strictly Necessary Cookies
Always Active
Analytics Cookies
Functional Cookies
Advertising Cookies
Reject All
Confirm My Choices
Powered by onetrust

not to allow some types of cookies. Click on the different category headings to find out more and change our default settings. However, blocking some types of cookies may impact your experience of the site and the services we are able to offer.

**Manage Consent Preferences**

**Strictly Necessary Cookies** Always Active

These cookies are necessary for the website to function and cannot be switched off in our systems. They are usually only set in response to actions made by you which amount to a request for services, such as setting your privacy preferences, logging in or filling in forms. You can set your browser to block or alert you about these cookies, but some parts of the site will not then work. These cookies do not store any personally identifiable information.

Cookie Details

**Analytics Cookies**

These cookies allow us to count visits and traffic sources so we can measure and improve the performance of our site. They help us to know which pages are the most and least popular and see how visitors move around the site. All information these cookies collect is aggregated and therefore anonymous. If you do not allow these cookies we will not know when you have visited our site, and will not be able to monitor its performance.

Cookie Details







31. In addition, users could click the "Cookie Details" hyperlinks shown above to view the third parties that Defendant identified as providers of Analytics Cookies, Functional Cookies, and/or Advertising Cookies. As shown below, many of the third parties identified by Defendant are the same Third Parties that intercepted Plaintiffs' and Class members' Private Communications despite their rejection of cookies.

**Analytics Cookies**

| | |
|---|---|
| Name | ANONCHK |
| Host | c.clarity.ms |
| Duration | A few seconds |
| Type | Third Party |
| Category | Analytics Cookies |
| Description | This cookie carries out information about how the end user uses the website and any advertising that the end user may have seen before visiting the said website. |

**clarity.ms**

| | |
|---|---|
| Name | SM |
| Host | c.clarity.ms |
| Duration | Session |
| Type | Third Party |
| Category | Analytics Cookies |
| Description | This is a Microsoft MSN 1st party cookie which we use to measure the use of the website for internal analytics. |

| | |
|---|---|
| Name | CLID |
| Host | www.clarity.ms |
| Duration | 364 Days |
| Type | Third Party |
| Category | Analytics Cookies |

## Advertising Cookies

| | |
|---|---|
| Name | uuid2 |
| Host | adnxs.com |
| Duration | 90 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by AppNexus Inc. The company provides a range of online advertising technology and services. |

**adnxs.com**

| | |
|---|---|
| Name | anj |
| Host | adnxs.com |
| Duration | 71 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by AppNexus Inc. The company provides a range of online advertising technology and services. |

| | |
|---|---|
| Name | icu |
| Host | adnxs.com |
| Duration | 89 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by AppNexus Inc. The company provides a range of online advertising technology and services. |

| | |
|---|---|
| Name | TDID |
| Host | adsrvr.org |
| Duration | 347 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by TheTradeDesk. The main business activity is: Ad Serving Platform |

**adsrvr.org**

| | |
|---|---|
| Name | TDCPM |
| Host | adsrvr.org |
| Duration | 347 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by TheTradeDesk. The main business activity is: Ad Serving Platform |

| | |
|---|---|
| Name | ad-id |
| Host | amazon-adsystem.com |
| Duration | 250 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by online retailer Amazon and is used as part of its affiliate marketing programme. |

**amazon-adsystem.com**

| | |
|---|---|
| Name | ad-privacy |
| Host | amazon-adsystem.com |
| Duration | 1894 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by online retailer Amazon and is used as part of its affiliate marketing programme. |

| | |
|---|---|
| Name | IDSYNC |
| Host | analytics.yahoo.com |
| Duration | 366 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Yahoo Inc. whose main business model is online advertising. Although this domain is associated with Yahoo's web analytics service, because these are third party cookies they can allow Yahoo, in combination with other cookies set, to collect data for targeted advertising purposes. |

**analytics.yahoo.com**

| | |
|---|---|
| Name | MUID |
| Host | bing.com |
| Duration | 390 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Mircosoft - it is the site for the search engine Bing. |

**bing.com**

| | |
|---|---|
| Name | bkdc |
| Host | bluekai.com |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Blue Kai. The main business activity is: Advertising/Audience Targeting |

**bluekai.com**

| | |
|---|---|
| Name | bkpa |
| Host | bluekai.com |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Blue Kai. The main business activity is: Advertising/Audience Targeting |

| | |
|---|---|
| Name | bku |
| Host | bluekai.com |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Blue Kai. The main business activity is: Advertising/Audience Targeting |

| | |
|---|---|
| Name | MR |
| Host | c.bing.com |
| Duration | 6 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Microsoft - it is the site for the search engine Bing. |

**c.bing.com**

| | |
|---|---|
| Name | SRM_B |
| Host | c.bing.com |
| Duration | 389 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Microsoft - it is the site for the search engine Bing. |

| | |
|---|---|
| Name | demdex |
| Host | demdex.net |
| Duration | 180 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This cookie helps Adobe Audience Manger perform basic functions such as visitor identification, ID synchronization, segmentation, modeling, reporting, etc. |

**demdex.net**

| | |
|---|---|
| Name | DSID |
| Host | doubleclick.net |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Doubleclick (Google). The main business activity is: Doubleclick is Googles real time bidding advertising exchange |

**doubleclick.net**

| | |
|---|---|
| Name | IDE |
| Host | doubleclick.net |
| Duration | 390 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Doubleclick (Google). The main business activity is: Doubleclick is Googles real time bidding advertising exchange |

| | |
|---|---|
| Name | test_cookie |
| Host | doubleclick.net |
| Duration | A few seconds |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Doubleclick (Google). The main business activity is: Doubleclick is Googles real time bidding advertising exchange |

| | |
|---|---|
| Name | |
| Host | www.facebook.com |
| Duration | Session |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Facebook, which is the world's largest social networking service. As a third party host provider, it mostly collects data on the interests of users via widgets such as the 'Like' button found on many websites. This is used to serve targeted advertising to its users when logged into its services. In 2014 it also started serving up behaviourally targeted advertising on other websites, similar to most dedicated online marketing companies. |

**facebook.com**

| | |
|---|---|
| Name | fr |
| Host | facebook.com |
| Duration | A few seconds |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | Contains browser and user unique ID combination, used for targeted advertising. |

| | |
|---|---|
| Name | UID |
| Host | scorecardresearch.com |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by ScorecardResearch (comScore). The main business activity is: Advertising. The cookies in this domain have lifespans of 2 years. |

**scorecardresearch.com**

| | |
|---|---|
| Name | sa-user-id |
| Host | srv.stackadapt.com |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Stackadapt. The company provides marketing and advertising services. |

**srv.stackadapt.com**

| | |
|---|---|
| Name | sa-user-id-v2 |
| Host | srv.stackadapt.com |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Stackadapt. The company provides marketing and advertising services. |

| | |
|---|---|
| Name | sa-user-id-v3 |
| Host | srv.stackadapt.com |
| Duration | 364 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Stackadapt. The company provides marketing and advertising services. |

| | |
|---|---|
| Name | A3 |
| Host | yahoo.com |
| Duration | 346 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Yahoo. The main business activity is: Search / Advertising |

**yahoo.com**

| | |
|---|---|
| Name | CONSENT |
| Host | youtube.com |
| Duration | 6167 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | YouTube is a Google owned platform for hosting and sharing videos. YouTube collects user data through videos embedded in websites, which is aggregated with profile data from other Google services in order to display targeted advertising to web visitors across a broad range of their own and other websites. |

**youtube.com**

| | |
|---|---|
| Name | VISITOR_INFO1_LIVE |
| Host | youtube.com |
| Duration | 365 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This cookie is used as a unique identifier to track viewing of videos |

| | |
|---|---|
| Name | VISITOR_PRIVACY_METADATA |
| Host | youtube.com |
| Duration | 179 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | YouTube is a Google owned platform for hosting and sharing videos. YouTube collects user data through videos embedded in websites, which is aggregated with profile data from other Google services in order to display targeted advertising to web visitors across a broad range of their own and other websites. |

| | |
|---|---|
| Name | YSC |
| Host | youtube.com |
| Duration | Session |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | YouTube is a Google owned platform for hosting and sharing videos. YouTube collects user data through videos embedded in websites, which is aggregated with profile data from other Google services in order to display targeted advertising to web visitors across a broad range of their own and other websites. |

| | |
|---|---|
| Name | CMID |
| Host | casalemedia.com |
| Duration | 364 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Casale Media. The main business activity is: Advertising |

**casalemedia.com**

| | |
|---|---|
| Name | CMPRO |
| Host | casalemedia.com |
| Duration | 89 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Casale Media. The main business activity is: Advertising |

| | |
|---|---|
| Name | CMPS |
| Host | casalemedia.com |
| Duration | 89 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Casale Media. The main business activity is: Advertising |

| | |
|---|---|
| Name | CMTS |
| Host | casalemedia.com |
| Duration | 89 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | TS |

| | |
|---|---|
| Name | MUID |
| Host | clarity.ms |
| Duration | 389 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This cookie is widely used my Microsoft as a unique user identifier. It can be set by embedded microsoft scripts. Widely believed to sync across many different Microsoft domains, allowing user tracking. |

**clarity.ms**

| | |
|---|---|
| Name | KRTBCOOKIE_xxxx |
| Host | pubmatic.com |
| Duration | 30 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This cookie is used to correlate IDs with those of Pubmatic partners (such as demand side platform clients or other advertising technology companies). Pubmatic passes information stored by the partner in this cookie to the partner when it is considering whether to purchase advertisements. This enables the partner to make better decisions about whether to display an advertisement to you. |

**pubmatic.com**

| | |
|---|---|
| Name | KTPCACOOKIE |
| Host | pubmatic.com |
| Duration | 1 Day |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Pubmatic. It operates an advertising exchange platform where online publishers can sell targeted advertising space to media buyers using real time bidding. |

| | |
|---|---|
| Name | PUBMDCID |
| Host | pubmatic.com |
| Duration | A few seconds |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Pubmatic. It operates an advertising exchange platform where online publishers can sell targeted advertising space to media buyers using real time bidding. |

| | |
|---|---|
| Name | PugT |
| Host | pubmatic.com |
| Duration | 30 Days |
| Type | Third Party |
| Category | Advertising Cookies |
| Description | This domain is owned by Pubmatic. It operates an advertising exchange platform where online publishers can sell targeted advertising space to media buyers using real time bidding. |

### B. Defendant Falsely Informed Users That They Could Reject the Website's Use of "All" Cookies.

32. When Plaintiffs and other consumers in California visited the Website, the Website immediately displayed to them a popup cookie consent banner. As shown in the screenshot below, the cookie consent banner stated, "Cookie Policy[.] By clicking 'Accept All Cookies', you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in [Defendant's] marketing efforts." The banner then purported to provide users the opportunity,

rather than to "Accept All Cookies[,]" to instead "Reject All" cookies by clicking or selecting the button to do so, as shown in the following screenshot from the Website:




33. Plaintiffs and other Website users who clicked or selected the "Reject All" button, thereby indicating their choice and/or agreement to decline or reject all cookies and tracking technologies in use on the Website, could then continue to browse the Website, as the popup cookie consent banner disappeared.

34. Defendant's popup cookie consent banner led Plaintiffs, and all those Website users similarly situated, to believe that they declined or rejected all cookies and tracking technologies, especially those used to "analyze site usage, and assist in [Defendant's] marketing efforts." The banner further reasonably led Plaintiffs and those Website users similarly situated to believe that Defendant would not allow third parties, through cookies, to access their Private Communications with the Website, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, upon clicking or selecting the "Reject All" button.

35. Defendant's representations, however, were false. In truth, Defendant did not abide by Plaintiffs' or other users' wishes. When Plaintiffs and other Website users clicked or selected the "Reject All" cookies button, they provided notice to Defendant that they did not consent to the placement or transmission of third-party cookies that would allow those parties to obtain their Private Communications with the Website.

36. Nevertheless, even after receiving that notice, Defendant caused third-party tracking cookies, including the Third Parties' cookies, to be placed on Website users' browsers and devices and/or intercepted by the Third Parties, thereby enabling the Third Parties to collect user data in real time that discloses Website visitors' Private Communications, including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. In other words, even when consumers like Plaintiffs tried to protect their privacy by rejecting cookies, Defendant failed to prevent cookies from being intercepted by the Third Parties, enabling them to track user behavior and communications.

37. Some aspects of the operations of the Third Parties' cookies on the Website can be observed using specialized tools that log incoming and outgoing Website network transmissions. The following screenshots, obtained using one such tool, show examples of Third-Party cookies being transmitted from a Website user's device and browser to Third Parties even after the user clicked or selected the "Reject All" button on the Website's popup cookie consent banner.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**




| Name | Status | Domain | Cookies |
|---|---|---|---|
| UCookieSetPug?rd=https%3A%2F%2Fs.am… | 302 | image6.pubmatic.com | 32 |
| Pug?vcode=bz0yJnR5cGU9MSZjb2RlPTM0M… | 302 | image2.pubmatic.com | 32 |
| saq_pxl?uid=ASkonu8PzVgpNeWRCOMw2w… | 200 | tags.srv.stackadapt.com | 10 |
| events.js | 200 | tags.srv.stackadapt.com | 10 |
| js_tracking?url=https%3A%2F%2Fwww.ufc.c… | 204 | tags.srv.stackadapt.com | 10 |
| saq_pxl?uid=ASkonu8PzVgpNeWRCOMw2w… | 200 | tags.srv.stackadapt.com | 10 |
| events.js | 200 | tags.srv.stackadapt.com | 10 |
| js_tracking?url=https%3A%2F%2Fwww.ufc.c… | 204 | tags.srv.stackadapt.com | 10 |
| saq_pxl?uid=ASkonu8PzVgpNeWRCOMw2w… | 200 | tags.srv.stackadapt.com | 10 |
| events.js | 200 | tags.srv.stackadapt.com | 10 |
| saq_pxl?uid=ASkonu8PzVgpNeWRCOMw2w… | 200 | tags.srv.stackadapt.com | 10 |
| events.js | 200 | tags.srv.stackadapt.com | 10 |
| saq_pxl?uid=ASkonu8PzVgpNeWRCOMw2w… | 200 | tags.srv.stackadapt.com | 10 |
| events.js | 200 | tags.srv.stackadapt.com | 10 |
| cksync?cs=63&axid_e=eS1HbHBHS3ZGRTJ… | 200 | hb.yahoo.net | 10 |
| l?ebcid=ALh7CaTADETaxgid6WU5S_W8_wDt… | 204 | www.google.com | 8 |
| l?ebcid=ALh7CaSBZxCgR6jS7Bt58n4a8DpA… | 204 | www.google.com | 8 |
| l?ebcid=ALh7CaQJiLQnA9nhZyJc2xaFowndi… | 204 | www.google.com | 8 |
| comments.php?app_id&channel=https%3A%… | 302 | www.facebook.com | 7 |
| comments.php?app_id=&channel=https%3A… | 302 | www.facebook.com | 7 |
| feedback.php?app_id&channel=https%3A%2… | 200 | www.facebook.com | 7 |
| iframe_api | 200 | www.youtube.com | 7 |
| tr/?id=351003319378605&ev=SubscribedButt… | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=SubscribedButt… | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=SubscribedBu… | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=SubscribedButt… | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=SubscribedBu… | 200 | www.facebook.com | 7 |
| tr/?id=351003319378605&ev=PageView&dl=h… | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=PageView&dl=h… | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=PageView&dl=… | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=PageView&dl=h… | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=PageView&dl=… | 200 | www.facebook.com | 7 |
| ga-audiences?t=sr&aip=1&_r=4&slf_rd=1&v=1… | 200 | www.google.com | 7 |
| iframe_api | 200 | www.youtube.com | 7 |
| tr/?id=1088241088667994&ev=SubscribedBu… | 200 | www.facebook.com | 7 |
| tr/?id=351003319378605&ev=SubscribedButt… | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=SubscribedButt… | 200 | www.facebook.com | 7 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| tr/?id=509857726552711&ev=SubscribedButt... | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=SubscribedBu... | 200 | www.facebook.com | 7 |
| tr/?id=1088241088667994&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| tr/?id=351003319378605&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| iframe_api | 200 | www.youtube.com | 7 |
| tr/?id=351003319378605&ev=SubscribedButt... | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=SubscribedButt... | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=SubscribedBu... | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=SubscribedButt... | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=SubscribedBu... | 200 | www.facebook.com | 7 |
| tr/?id=351003319378605&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| iframe_api | 200 | www.youtube.com | 7 |
| tr/?id=351003319378605&ev=SubscribedButt... | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=SubscribedButt... | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=SubscribedBu... | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=SubscribedButt... | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=SubscribedBu... | 200 | www.facebook.com | 7 |
| tr/?id=351003319378605&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| iframe_api | 200 | www.youtube.com | 7 |
| tr/?id=1664240797190452&ev=SubscribedBu... | 200 | www.facebook.com | 7 |
| tr/?id=351003319378605&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=659273391667868&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1664240797190452&ev=PageView&dl=... | 200 | www.facebook.com | 7 |
| tr/?id=509857726552711&ev=PageView&dl=h... | 200 | www.facebook.com | 7 |
| tr/?id=1676148929325324&ev=PageView&dl= | 200 | www.facebook.com | 7 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| tr/?id=1676148929325324&ev=PageView&dl=… | 200 | www.facebook.com | 7 |
| v2?tagid=V2_393725&AMAZON_REGION_SP… | 200 | odr.mookie1.com | 7 |
| v2?tagid=V2_393725&AMAZON_REGION_SP… | 200 | odr.mookie1.com | 7 |
| v2?tagid=V2_393725&AMAZON_REGION_SP… | 200 | odr.mookie1.com | 7 |
| v2?tagid=V2_393725&AMAZON_REGION_SP… | 200 | odr.mookie1.com | 7 |
| v2?tagid=V2_393725&AMAZON_REGION_SP… | 200 | odr.mookie1.com | 7 |
| comments.php?app_id=&channel=https%3A… | 302 | www.facebook.com | 7 |
| feedback.php?app_id&channel=https%3A%2… | 200 | www.facebook.com | 7 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 302 | analytics.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 302 | analytics.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 204 | analytics.google.com | 6 |
| src=10683637;dc_pre=CKLov9WywlIDFUYtr… | 200 | adservice.google.com | 6 |
| dc_pre=CPPTtNWywlIDFV4QrQYd-zMF8Q;sr… | 200 | adservice.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 302 | analytics.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 302 | analytics.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 204 | analytics.google.com | 6 |
| src=10683637;dc_pre=CMSZybGywlIDFZ3M… | 200 | adservice.google.com | 6 |
| dc_pre=CJKwubGywlIDFYgUrQYd1IMBdw;sr… | 200 | adservice.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 302 | analytics.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 302 | analytics.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 204 | analytics.google.com | 6 |
| src=10683637;dc_pre=CJD5geGywlIDFZnOw… | 200 | adservice.google.com | 6 |
| dc_pre=CJrt_OCywlIDFRnOwgQdcvwNdg;src… | 200 | adservice.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 204 | analytics.google.com | 6 |
| src=10683637;dc_pre=COvEy92ywlIDFWwpr… | 200 | adservice.google.com | 6 |
| src=10683637;dc_pre=CLbCy92ywlIDFSwSr… | 200 | adservice.google.com | 6 |
| dc_pre=CJCBwt2ywlIDFWIVfQodbbkH6g;src… | 200 | adservice.google.com | 6 |
| collect?v=2&tid=G-10DX6TQH49&gtm=45je3… | 204 | analytics.google.com | 6 |
| src=10683637;dc_pre=CPjYudmywlIDFX0RrQ… | 200 | adservice.google.com | 6 |
| dc_pre=CNCjudmywlIDFXkerQYdpk8Lvw;src… | 200 | adservice.google.com | 6 |
| 926885548/?random=1699858502664&cv=11… | 200 | www.google.com | 6 |
| dc_pre=CP-z07GywlIDFS80RAgdqRkN5A;src… | 200 | adservice.google.com | 6 |
| dc_pre=CJKxt7GywlIDFZ8vRAgdLjwOsg;src=… | 200 | adservice.google.com | 6 |
| dc_pre=CKvstrGywlIDFbUwRAgdKhkCag;src… | 200 | adservice.google.com | 6 |
| 926885548/?random=1699858602127&cv=11… | 200 | www.google.com | 6 |
| dc_pre=COnZi-GywlIDFSc4RAgdh0sHIQ;src=… | 200 | adservice.google.com | 6 |
| dc_pre=CPOJ--CywlIDFbI0RAgdcvoN3g;src=… | 200 | adservice.google.com | 6 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| 926885548/?random=1699858594936&cv=11… | 200 | www.google.com | 6 |
| dc_pre=CKz41d2ywlIDFbWN7gEdXssH2A;src… | 200 | adservice.google.com | 6 |
| dc_pre=CIWZwN2ywlIDFdAgRAgdjB0KZw;sr… | 200 | adservice.google.com | 6 |
| 926885548/?random=1699858586457&cv=11… | 200 | www.google.com | 6 |
| dc_pre=CMSlwdmywlIDFS2G7gEdZcME2Q;s… | 200 | adservice.google.com | 6 |
| dc_pre=CPeVtdmywlIDFRSI7gEdfyYF4w;src=… | 200 | adservice.google.com | 6 |
| 926885548/?random=1699858578193&cv=11… | 200 | www.google.com | 6 |
| dc_pre=CIDd1tWywlIDFW44RAgdjtoMxg;src=… | 200 | adservice.google.com | 6 |
| dc_pre=CP3NstWywlIDFb8ORAgdM8AKTQ;s… | 200 | adservice.google.com | 6 |
| dc_pre=CJHwsdWywlIDFZE5RAgdyAIDKA;sr… | 200 | adservice.google.com | 6 |
| pixie?pi=0fa41ba2-1876-4fac-90ab-e87b459… | 200 | ib.adnxs.com | 5 |
| px?id=1442335&seg=25486803&t=2 | 200 | secure.adnxs.com | 5 |
| pixie?pi=0fa41ba2-1876-4fac-90ab-e87b459… | 200 | ib.adnxs.com | 5 |
| px?id=1442335&seg=25486803&t=2 | 200 | secure.adnxs.com | 5 |
| pixie?pi=0fa41ba2-1876-4fac-90ab-e87b459… | 200 | ib.adnxs.com | 5 |
| px?id=1442335&seg=25486803&t=2 | 200 | secure.adnxs.com | 5 |
| px?id=1442338&seg=25486806&t=2 | 200 | secure.adnxs.com | 5 |
| pixie?pi=0fa41ba2-1876-4fac-90ab-e87b459… | 200 | ib.adnxs.com | 5 |
| px?id=1442335&seg=25486803&t=2 | 200 | secure.adnxs.com | 5 |
| pixie?pi=0fa41ba2-1876-4fac-90ab-e87b459… | 200 | ib.adnxs.com | 5 |
| px?id=1442335&seg=25486803&t=2 | 200 | secure.adnxs.com | 5 |
| getuid?https://s.amazon-adsystem.com/ecm… | 302 | ib.adnxs.com | 5 |
| getuid?https://cookie-matching.mediarithmics… | 302 | ib.adnxs.com | 5 |
| getuid?https://tags.bluekai.com/site/3085?id=… | 302 | ib.adnxs.com | 5 |
| getuid?https://tags.bluekai.com/site/3085?id=… | 302 | ib.adnxs.com | 5 |
| getuid?https://tags.bluekai.com/site/3085?id=… | 302 | ib.adnxs.com | 5 |
| getuid?https://tags.bluekai.com/site/3085?id=… | 302 | ib.adnxs.com | 5 |
| getuid?https://tags.bluekai.com/site/3085?id=… | 302 | ib.adnxs.com | 5 |
| getuid?https://tags.bluekai.com/site/3085?id=… | 302 | ib.adnxs.com | 5 |
| getuid?https://tags.bluekai.com/site/3085?id=… | 302 | ib.adnxs.com | 5 |
| seg?add=18730400&t=1 | 200 | secure.adnxs.com | 5 |
| seg?add=18730394&t=1 | 200 | secure.adnxs.com | 5 |
| seg?add=18730400&t=1 | 200 | secure.adnxs.com | 5 |
| seg?add=18730400&t=1 | 200 | secure.adnxs.com | 5 |
| seg?add=18730400&t=1 | 200 | secure.adnxs.com | 5 |
| seg?add=18730400&t=1 | 200 | secure.adnxs.com | 5 |
| seg?add=18730397&t=1 | 200 | secure.adnxs.com | 5 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| prototype.forms.js?3.3.47443 | 200 | ufc.jotform.com | 4 |
| form-submit-button-black_blue.css?3.3.47443 | 200 | ufc.jotform.com | 4 |
| donationBox.css?v=3.3.47443 | 200 | ufc.jotform.com | 4 |
| payment_feature.css?3.3.47443 | 200 | ufc.jotform.com | 4 |
| 566a91c2977cdfcd478b4567.css?v=3.3.47443 | 200 | ufc.jotform.com | 4 |
| nova.css?3.3.47443 | 200 | ufc.jotform.com | 4 |
| form-common.css?v=e311ab0 | 200 | ufc.jotform.com | 4 |
| 222856099632162/?ref=https%253A%252F… | 204 | ufc.jotform.com | 4 |
| control_inline.css | 200 | ufc.jotform.com | 4 |
| control_appointment.css | 200 | ufc.jotform.com | 4 |
| formCss.css?3.3.47443 | 200 | ufc.jotform.com | 4 |
| validategateways.js?v=3.3.47443 | 200 | ufc.jotform.com | 4 |
| punycode-1.4.1.min.js | 200 | ufc.jotform.com | 4 |
| jotform.forms.js?3.3.47443 | 200 | ufc.jotform.com | 4 |
| match?publisher_dsp_id=416&external_user_i… | 200 | match.360yield.com | 4 |
| match?publisher_dsp_id=416&external_user_i… | 200 | match.360yield.com | 4 |
| match?publisher_dsp_id=416&external_user_i… | 200 | match.360yield.com | 4 |
| match?publisher_dsp_id=416&external_user_i… | 200 | match.360yield.com | 4 |
| match?publisher_dsp_id=416&external_user_i… | 200 | match.360yield.com | 4 |
| 222856099632162?isIframeEmbed=1 | 200 | ufc.jotform.com | 3 |
| 6 | 200 | m.stripe.com | 3 |
| cm?id=e818ca1e-0c23-caa8-0dd3-096b0ada… | 302 | us-u.openx.net | 3 |
| ibs:dpid=139200&dpuuid=HGyOAIAHSBWT5… | 302 | dpm.demdex.net | 3 |
| rrum?cm_dsp_id=198&external_user_id=XgfX… | 302 | dsum-sec.casalemedia.com | 3 |
| input?key=APX&apx_uid=2859233672810674… | 303 | cookie-matching.mediarithmics… | 3 |
| input?key=GOO&key=GOO&gdpr=0&action=… | 303 | cookie-matching.mediarithmics… | 3 |
| get_or_create?gdpr=0&domid=1109 | 303 | cookie-matching.mediarithmics… | 3 |
| get_user_agent_id?dom_token=amazon-na-2… | 303 | cookie-matching.mediarithmics… | 3 |
| 77923?ret=html&dt=0&postload=1&r=65673490 | 200 | stags.bluekai.com | 2 |
| activityi;fledge=1;src=5405156;type=websi0;c… | 200 | td.doubleclick.net | 2 |
| activityi;fledge=1;src=6950741;type=ufcpt0;c… | 200 | td.doubleclick.net | 2 |
| activityi;fledge=1;src=8220823;type=invmedia… | 200 | td.doubleclick.net | 2 |
| up?adv=herhwld&ref=https%3A%2F%2Fww… | 200 | insight.adsrvr.org | 2 |
| 77923?ret=html&dt=0&postload=1&r=68416618 | 200 | stags.bluekai.com | 2 |
| activityi;fledge=1;src=5405156;type=ufctv0;ca… | 200 | td.doubleclick.net | 2 |
| activityi;src=8220823;type=invmedia;cat=kb5… | 302 | 8220823.fls.doubleclick.net | 2 |
| activityi;dc_pre=CIWZwN2ywIIDFdAgRAgdjB… | 200 | 8220823.fls.doubleclick.net | 2 |


hazka-vs-pereira-results-highlights-winner-interviews-new-york-city

Elements Console Sources Network Performance Memory Application Sec

Preserve log Disable cache No throttling

Filter Invert Hide data URLs Hide extension URLs All Doc JS F

Big request rows

Overview

| Name | Status | Domain | Cookies |
|---|---|---|---|
| iu3?d=generic&ex-fargs=%3Fid%3Dfddf2e1f-... | 200 | aax-fe.amazon-adsystem.com | 2 |
| activityi;fledge=1;src=5405156;type=ufctv0;ca... | 200 | td.doubleclick.net | 2 |
| 77923?ret=html&phint=__bk_t%3DThe%20O... | 200 | stags.bluekai.com | 2 |
| 41024?ret=html&limit=10&phint=pctx%3Dglobal | 200 | stags.bluekai.com | 2 |
| activityi;fledge=1;src=5405156;type=ufctv0;ca... | 200 | td.doubleclick.net | 2 |
| activityi;src=5405156;type=ufctv0;cat=2019u... | 302 | 5405156.fls.doubleclick.net | 2 |
| activityi;dc_pre=CMSlwdmywIIDFS2G7gEdZc... | 200 | 5405156.fls.doubleclick.net | 2 |
| activityi;src=8220823;type=invmedia;cat=kb5... | 302 | 8220823.fls.doubleclick.net | 2 |
| activityi;dc_pre=CPOJ--CywIIDFbI0RAgdcvo... | 200 | 8220823.fls.doubleclick.net | 2 |
| activityi;src=8220823;type=invmedia;cat=kb5... | 302 | 8220823.fls.doubleclick.net | 2 |
| activityi;dc_pre=CJKxt7GywIIDFZ8vRAgdLjw... | 200 | 8220823.fls.doubleclick.net | 2 |
| activityi;fledge=1;src=5405156;type=ufctv0;ca... | 200 | td.doubleclick.net | 2 |
| 926885548?random=1699858502664&cv=11... | 200 | td.doubleclick.net | 2 |
| activityi;src=5405156;type=websi0;cat=2019r... | 302 | 5405156.fls.doubleclick.net | 2 |
| activityi;dc_pre=CJHwsdWywIIDFZE5RAgdyA... | 200 | 5405156.fls.doubleclick.net | 2 |
| 926885548?random=1699858602127&cv=11... | 200 | td.doubleclick.net | 2 |
| pr?exlist=mp_sx_n-mediarithmics_n-ix-HMT_... | 200 | s.amazon-adsystem.com | 2 |
| activityi;fledge=1;src=6950741;type=ufcpt0;c... | 200 | td.doubleclick.net | 2 |
| 926885548?random=1699858586457&cv=11... | 200 | td.doubleclick.net | 2 |
| up?adv=herhwld&ref=https%3A%2F%2Fww... | 200 | insight.adsrvr.org | 2 |
| activityi;fledge=1;src=5405156;type=ufctv0;ca... | 200 | td.doubleclick.net | 2 |
| activityi;src=5405156;type=ufctv0;cat=2019u... | 302 | 5405156.fls.doubleclick.net | 2 |
| activityi;dc_pre=CP-z07GywIIDFS80RAgdqRk... | 200 | 5405156.fls.doubleclick.net | 2 |
| activityi;src=8220823;type=invmedia;cat=kb5... | 302 | 8220823.fls.doubleclick.net | 2 |
| activityi;dc_pre=CPeVtdmywIIDFRSI7gEdfyYF... | 200 | 8220823.fls.doubleclick.net | 2 |
| up?adv=herhwld&ref=https%3A%2F%2Fww... | 200 | insight.adsrvr.org | 2 |
| activityi;fledge=1;src=6950741;type=ufcpt0;c... | 200 | td.doubleclick.net | 2 |
| activityi;src=5405156;type=ufctv0;cat=2019u... | 302 | 5405156.fls.doubleclick.net | 2 |
| activityi;dc_pre=COnZi-GywIIDFSc4RAgdh0s... | 200 | 5405156.fls.doubleclick.net | 2 |
| 77923?ret=html&dt=0&postload=7&r=80219704 | 200 | stags.bluekai.com | 2 |
| iu3?d=generic&ex-fargs=%3Fid%3Dfddf2e1f-... | 200 | aax-fe.amazon-adsystem.com | 2 |
| 926885548?random=1699858578193&cv=11... | 200 | td.doubleclick.net | 2 |
| up?adv=herhwld&ref=https%3A%2F%2Fww... | 200 | insight.adsrvr.org | 2 |
| activityi;fledge=1;src=8220823;type=invmedia... | 200 | td.doubleclick.net | 2 |
| activityi;src=8220823;type=invmedia;cat=kb5... | 302 | 8220823.fls.doubleclick.net | 2 |
| activityi;dc_pre=CP3NstWywIIDFb8ORAgdM8... | 200 | 8220823.fls.doubleclick.net | 2 |
| iu3?d=generic&ex-fargs=%3Fid%3Dfddf2e1f-... | 200 | aax-fe.amazon-adsystem.com | 2 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| activityi;src=5405156;type=ufctv0;cat=2019u... | 302 | 5405156.fls.doubleclick.net | 2 |
| activityi;dc_pre=CIDd1tWywIIDFW44RAgdjto... | 200 | 5405156.fls.doubleclick.net | 2 |
| 41024?ret=html&limit=10&phint=pctx%3Deve... | 200 | stags.bluekai.com | 2 |
| activityi;fledge=1;src=8220823;type=invmedia... | 200 | td.doubleclick.net | 2 |
| 41024?ret=html&limit=10&phint=pctx%3Dglobal | 200 | stags.bluekai.com | 2 |
| activityi;fledge=1;src=6950741;type=ufcpt0;c... | 200 | td.doubleclick.net | 2 |
| activityi;fledge=1;src=8220823;type=invmedia... | 200 | td.doubleclick.net | 2 |
| 926885548?random=1699858594936&cv=11... | 200 | td.doubleclick.net | 2 |
| pr?exlist=mp_sx_kr_n-semasio-ecm_n-kg-H... | 200 | s.amazon-adsystem.com | 2 |
| 77923?ret=html&phint=__bk_t%3DUFC%202... | 200 | stags.bluekai.com | 2 |
| iu3?d=generic&ex-fargs=%3Fid%3Dfddf2e1f-... | 200 | aax-fe.amazon-adsystem.com | 2 |
| 77923?ret=html&phint=__bk_t%3DUFC%20Fi... | 200 | stags.bluekai.com | 2 |
| pr?exlist=mp_sx_n-kg-HMT_n-visualiq_an_im... | 200 | s.amazon-adsystem.com | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| ads?iu=%2F5458%2Fzuffa.ufc&description_u... | 200 | pubads.g.doubleclick.net | 2 |
| m-outer-6576085ca35ee42f2f484cda6763e4a... | 200 | js.stripe.com | 2 |
| controller-dc43c737398d6271fb21842f4b494... | 200 | js.stripe.com | 2 |
| shared-c575c7a277a567f4e3576ad3c584d4d... | 200 | js.stripe.com | 2 |
| gpt.js | 200 | securepubads.g.doubleclick.net | 2 |
| v3 | 200 | js.stripe.com | 2 |
| pubads_impl.js?cb=31079530 | 200 | securepubads.g.doubleclick.net | 2 |
| trusted-types-checker-239db17d86d6320632... | 200 | js.stripe.com | 2 |
| 0?ti=211014985&Ver=2&mid=2e1c124b-0efc-... | 204 | bat.bing.com | 2 |
| 211014985 | 200 | www.clarity.ms | 2 |
| view?xai=AKAOjsuSxe-LAEtF3-QpbUYR_ap7... | 200 | securepubads.g.doubleclick.net | 2 |
| 0?ti=211014985&Ver=2&mid=2e1c124b-0efc-... | 204 | bat.bing.com | 2 |
| 211014985.js | 200 | bat.bing.com | 2 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| 211014985 | 200 | www.clarity.ms | 2 |
| view?xai=AKAOjsuSxe-LAEtF3-QpbUYR_ap7… | 200 | securepubads.g.doubleclick.net | 2 |
| 0?ti=211014985&Ver=2&mid=2e1c124b-0efc-… | 204 | bat.bing.com | 2 |
| 211014985.js | 200 | bat.bing.com | 2 |
| pixel?uuid=0cc96c15-1185-4a14-946e-a5804… | 200 | ad.ipredictive.com | 2 |
| activity;register_conversion=1;src=5405156;ty… | 200 | ad.doubleclick.net | 2 |
| src=10683637;dc_pre=CKLov9WywlIDFUYtr… | 302 | ad.doubleclick.net | 2 |
| src=10683637;type=invmedia;cat=ufc-a0;dc_l… | 302 | ad.doubleclick.net | 2 |
| ads?pvsid=2770500916824281&correlator=2… | 200 | securepubads.g.doubleclick.net | 2 |
| activity;register_conversion=1;src=6950741;ty… | 200 | ad.doubleclick.net | 2 |
| activity;dc_pre=CPPTtNWywlIDFV4QrQYd-z… | 302 | ad.doubleclick.net | 2 |
| activity;src=6950741;type=ufcpt0;cat=ufcco0;… | 302 | ad.doubleclick.net | 2 |
| source=web | 200 | d.turn.com | 2 |
| activity;register_conversion=1;src=8220823;ty… | 200 | ad.doubleclick.net | 2 |
| activity;register_conversion=1;src=5405156;ty… | 200 | ad.doubleclick.net | 2 |
| collect?t=dc&aip=1&_r=3&v=1&_v=j101&tid=… | 200 | stats.g.doubleclick.net | 2 |
| ft.stat?0-7658562;4266634;0-310-0-0-925663… | 200 | stat.flashtalking.com | 2 |
| ft.stat?0-7658562;4266634;0-310-0-0-235541… | 200 | stat.flashtalking.com | 2 |
| ft.stat?0-7658562;4266634;0-310-0-0-659435… | 200 | stat.flashtalking.com | 2 |
| ft.stat?0-7658562;4266634;0-304-0-0-188366… | 200 | stat.flashtalking.com | 2 |
| 7658562;4266634;0;271;18E3AE68-A994-74F… | 200 | ad-events.flashtalking.com | 2 |
| 211014985 | 200 | www.clarity.ms | 2 |
| ModeloEspecial_Display-General_280x280_C… | 200 | cdn.flashtalking.com | 2 |
| 0?ti=211014985&Ver=2&mid=952b76de-f30d-… | 204 | bat.bing.com | 2 |
| pixel?uuid=0cc96c15-1185-4a14-946e-a5804… | 200 | ad.ipredictive.com | 2 |
| activity;register_conversion=1;src=5405156;ty… | 200 | ad.doubleclick.net | 2 |
| src=10683637;dc_pre=CMSZybGywlIDFZ3M… | 302 | ad.doubleclick.net | 2 |
| src=10683637;type=invmedia;cat=ufc-a0;dc_l… | 302 | ad.doubleclick.net | 2 |
| view?xai=AKAOjssAFbKmBSCf8exSL80E1Un… | 200 | securepubads.g.doubleclick.net | 2 |
| 218188;7658562;201;js;UFC;DBRMEFY24AW… | 200 | servedby.flashtalking.com | 2 |
| view?xai=AKAOjstyxT8412T3tIM4zbZUwV6jr0… | 200 | securepubads.g.doubleclick.net | 2 |
| activity;register_conversion=1;src=6950741;ty… | 200 | ad.doubleclick.net | 2 |
| activity;dc_pre=CJKwubGywlIDFYgUrQYd1I… | 302 | ad.doubleclick.net | 2 |
| activity;src=6950741;type=ufcpt0;cat=ufcco0;… | 302 | ad.doubleclick.net | 2 |
| source=web | 200 | d.turn.com | 2 |
| activity;register_conversion=1;src=8220823;ty… | 200 | ad.doubleclick.net | 2 |
| activity;register_conversion=1;src=5405156;ty… | 200 | ad.doubleclick.net | 2 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| ads?pvsid=1861645194111782&correlator=1… | 200 | securepubads.g.doubleclick.net | 2 |
| 211014985 | 200 | www.clarity.ms | 2 |
| 0?ti=211014985&Ver=2&mid=405ed30e-937c… | 204 | bat.bing.com | 2 |
| pixel?uuid=0cc96c15-1185-4a14-946e-a5804… | 200 | ad.ipredictive.com | 2 |
| activity;register_conversion=1;src=5405156;ty… | 200 | ad.doubleclick.net | 2 |
| src=10683637;dc_pre=CJD5geGywlIDFZnOw… | 302 | ad.doubleclick.net | 2 |
| src=10683637;type=invmedia;cat=ufc-a0;dc_l… | 302 | ad.doubleclick.net | 2 |
| activity;register_conversion=1;src=6950741;ty… | 200 | ad.doubleclick.net | 2 |
| activity;dc_pre=CJrt_OCywlIDFRnOwgQdcvw… | 302 | ad.doubleclick.net | 2 |
| activity;src=6950741;type=ufcpt0;cat=ufcco0;… | 302 | ad.doubleclick.net | 2 |
| source=web | 200 | d.turn.com | 2 |
| activity;register_conversion=1;src=8220823;ty… | 200 | ad.doubleclick.net | 2 |
| view?xai=AKAOjsu5MW33HKGaFPeQtyzxJRr… | 200 | securepubads.g.doubleclick.net | 2 |
| ads?pvsid=1008388383020422&correlator=3… | 200 | securepubads.g.doubleclick.net | 2 |
| ft.stat?0-7658575;4266634;0-310-0-0-193568… | 200 | stat.flashtalking.com | 2 |
| ft.stat?0-7658562;4266634;0-310-0-0-811767… | 200 | stat.flashtalking.com | 2 |
| ft.stat?0-7658575;4266634;0-304-0-0-261771… | 200 | stat.flashtalking.com | 2 |
| 7658575;4266634;0;271;84EB7529-3D65-144… | 200 | ad-events.flashtalking.com | 2 |
| ModeloEspecial_Display-General_280x280_C… | 200 | cdn.flashtalking.com | 2 |
| ft.stat?0-7658562;4266634;0-304-0-0-972731… | 200 | stat.flashtalking.com | 2 |
| 7658562;4266634;0;271;83812E8B-1C8D-62… | 200 | ad-events.flashtalking.com | 2 |
| ModeloEspecial_Display-General_280x280_C… | 200 | cdn.flashtalking.com | 2 |
| 211014985 | 200 | www.clarity.ms | 2 |
| 0?ti=211014985&Ver=2&mid=c18fd528-f491-… | 204 | bat.bing.com | 2 |
| pixel?uuid=0cc96c15-1185-4a14-946e-a5804… | 200 | ad.ipredictive.com | 2 |
| activity;register_conversion=1;src=5405156;ty… | 200 | ad.doubleclick.net | 2 |
| src=10683637;dc_pre=COvEy92ywlIDFWwpr… | 302 | ad.doubleclick.net | 2 |
| src=10683637;type=invmedia;cat=ufc-l0;dc_l… | 302 | ad.doubleclick.net | 2 |
| src=10683637;dc_pre=CLbCy92ywlIDFSwSr… | 302 | ad.doubleclick.net | 2 |
| src=10683637;type=invmedia;cat=ufc-a0;dc_l… | 302 | ad.doubleclick.net | 2 |
| 218188;7658575;201;js;UFC;DBRMEFY24AW… | 200 | servedby.flashtalking.com | 2 |
| view?xai=AKAOjstKB0PfF5XXDw4MJCkIltAq… | 200 | securepubads.g.doubleclick.net | 2 |
| 218188;7658562;201;js;UFC;DBRMEFY24AW… | 200 | servedby.flashtalking.com | 2 |
| view?xai=AKAOjssMHrRToMqXojrDSc_iM5Qh… | 200 | securepubads.g.doubleclick.net | 2 |
| beacon?b2=h9mRXRdfT3LnGg2QyWOwr884… | 200 | r.turn.com | 2 |
| activity;register_conversion=1;src=6950741;ty… | 200 | ad.doubleclick.net | 2 |
| activity;dc_pre=CJCBwt2ywlIDFWlVfQodbbk… | 302 | ad.doubleclick.net | 2 |


hazka-vs-pereira-results-highlights-winner-interviews-new-york-city
Elements Console Sources Network Performance Memory Application Sec
Preserve log
Disable cache
No throttling
Filter
Invert
Hide data URLs
Hide extension URLs
All
Doc
JS
Big request rows
Overview
Name Status Domain Cookies
activity;src=6950741;type=ufcpt0;cat=ufcco0;... 302 ad.doubleclick.net 2
source=web 200 d.turn.com 2
activity;register_conversion=1;src=8220823;ty... 200 ad.doubleclick.net 2
ads?pvsid=4206093240104755&correlator=9... 200 securepubads.g.doubleclick.net 2
0?ti=211014985&Ver=2&mid=fa81227c-52c9-... 204 bat.bing.com 2
211014985 200 www.clarity.ms 2
0?ti=211014985&Ver=2&mid=fa81227c-52c9-... 204 bat.bing.com 2
pixel?uuid=0cc96c15-1185-4a14-946e-a5804... 200 ad.ipredictive.com 2
activity;register_conversion=1;src=5405156;ty... 200 ad.doubleclick.net 2
src=10683637;dc_pre=CPjYudmywlIDFX0RrQ... 302 ad.doubleclick.net 2
src=10683637;type=invmedia;cat=ufc-a0;dc_l... 302 ad.doubleclick.net 2
activity;register_conversion=1;src=6950741;ty... 200 ad.doubleclick.net 2
activity;dc_pre=CNCjudmywlIDFXkerQYdpk8... 302 ad.doubleclick.net 2
activity;src=6950741;type=ufcpt0;cat=ufcco0;... 302 ad.doubleclick.net 2
source=web 200 d.turn.com 2
activity;register_conversion=1;src=8220823;ty... 200 ad.doubleclick.net 2
rtb 302 sync.taboola.com 2
ecm3?ex=taboola.com&id=e3ab9a12-3f18-44... 200 s.amazon-adsystem.com 2
ecm3?ex=pubmatic.com&id=BE8BA196-97F... 200 s.amazon-adsystem.com 2
token?pid=2179&pt=n&puid=Hzld_W5yTqCW... 302 pixel.rubiconproject.com 2
ecm3?ex=rubiconprojectHMT&id=Hzld_W5yT... 200 s.amazon-adsystem.com 2
ecm3?rcode=1&ex=imdb.com 200 s.amazon-adsystem.com 2
ecm3?id=2859233672810674504&ex=appnex... 200 s.amazon-adsystem.com 2
ecm3?ex=KargoHMT 200 s.amazon-adsystem.com 2
ecm3?ex=KargoHMT 200 s.amazon-adsystem.com 2
ecm3?ex=KargoHMT 200 s.amazon-adsystem.com 2
ecm3?ex=openx.com&id=6a6893b6-9890-cfe... 200 s.amazon-adsystem.com 2
36840?redir=https%3A%2F%2Fs.amazon-ad... 302 tags.bluekai.com 2
ecm3?ex=bluekai.com&id=DWRAwvcl999vN5... 200 s.amazon-adsystem.com 2
ecm3?ex=adobe.com&id=415130396656732... 200 s.amazon-adsystem.com 2
token?pid=2179&pt=n 302 token.rubiconproject.com 2
ecm3?id=HmbgPm401mmOqyy9lyPLWsWW... 200 s.amazon-adsystem.com 2
ecm3?ex=KargoHMT 200 s.amazon-adsystem.com 2
ecm3?ex=semasio&id=D5516FECC08B59B8 200 s.amazon-adsystem.com 2
ecm3?ex=pubmaticHMT&id=lUnv9Z_MR9Ow... 200 s.amazon-adsystem.com 2
ecm3?ex=KargoHMT 200 s.amazon-adsystem.com 2
sync?_origin=0&dpid=58516&ovsid=9xaiBfXZ... 302 ups.analytics.yahoo.com 2




| Name | Status | Domain | Cookies |
|---|---|---|---|
| sync?_origin=1&redir=true&uid=9xaiBfXZQda... | 302 | ups.analytics.yahoo.com | 2 |
| ecm3?ex=indexHMT&id=ZUvmQTX6Y7STXry... | 200 | s.amazon-adsystem.com | 2 |
| pixel?google_nid=medr&google_cm&key=GO... | 302 | cm.g.doubleclick.net | 2 |
| ecm3?ex=mediarithmics&id=vec-4663190567... | 200 | s.amazon-adsystem.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | (unkno... | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 200 | tags.bluekai.com | 2 |
| 30089?limit=0&id=13c97f4e-6f61-43f9-b092-... | 200 | tags.bluekai.com | 2 |
| 3085?id=2859233672810674504& | 200 | tags.bluekai.com | 2 |
| ping_match.gif?st=BLUEKAI&rurl=https%3A... | 204 | pm.w55c.net | 2 |
| pixel?google_nid=bluekai&google_cm&google... | 302 | cm.g.doubleclick.net | 2 |
| 2981?id=&google_gid=CAESEBfosel1BRb97... | 200 | tags.bluekai.com | 2 |
| 30089?limit=0&id=13c97f4e-6f61-43f9-b092-... | 200 | tags.bluekai.com | 2 |
| 3085?id=2859233672810674504& | 200 | tags.bluekai.com | 2 |
| ping_match.gif?st=BLUEKAI&rurl=https%3A... | 204 | pm.w55c.net | 2 |
| pixel?google_nid=bluekai&google_cm&google... | 302 | cm.g.doubleclick.net | 2 |
| 2981?id=&google_gid=CAESEBfosel1BRb97... | 200 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | (unkno... | tags.bluekai.com | 2 |
| 30089?limit=0&id=13c97f4e-6f61-43f9-b092-... | 200 | tags.bluekai.com | 2 |
| 3085?id=2859233672810674504& | 200 | tags.bluekai.com | 2 |
| ping_match.gif?st=BLUEKAI&rurl=https%3A... | 204 | pm.w55c.net | 2 |
| pixel?google_nid=bluekai&google_cm&google... | 302 | cm.g.doubleclick.net | 2 |
| 2981?id=&google_gid=CAESEBfosel1BRb97... | 200 | tags.bluekai.com | 2 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | (failed) | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | (unkno… | tags.bluekai.com | 2 |
| 30089?limit=0&id=13c97f4e-6f61-43f9-b092-… | 200 | tags.bluekai.com | 2 |
| 3085?id=2859233672810674504& | 200 | tags.bluekai.com | 2 |
| ping_match.gif?st=BLUEKAI&rurl=https%3A… | 204 | pm.w55c.net | 2 |
| pixel?google_nid=bluekai&google_cm&google… | 302 | cm.g.doubleclick.net | 2 |

hazka-vs-pereira-results-highlights-winner-interviews-new-york-city

Elements Console Sources Network Performance Memory Application Sec

Preserve log Disable cache No throttling

Filter Invert Hide data URLs Hide extension URLs All Doc JS F

Big request rows

Overview

| Name | Status | Domain | Cookies |
|---|---|---|---|
| 2981?id=&google_gid=CAESEBfosel1BRb97… | 200 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 302 | tags.bluekai.com | 2 |
| 29983 | 200 | tags.bluekai.com | 2 |
| 30089?limit=0&id=13c97f4e-6f61-43f9-b092-… | 200 | tags.bluekai.com | 2 |
| 3085?id=2859233672810674504& | 200 | tags.bluekai.com | 2 |
| ping_match.gif?st=BLUEKAI&rurl=https%3A… | 204 | pm.w55c.net | 2 |
| pixel?google_nid=bluekai&google_cm&google… | 302 | cm.g.doubleclick.net | 2 |
| 2981?id=&google_gid=CAESEBfosel1BRb97… | 200 | tags.bluekai.com | 2 |
| 30089?limit=0&id=13c97f4e-6f61-43f9-b092-… | 200 | tags.bluekai.com | 2 |
| 3085?id=2859233672810674504& | 200 | tags.bluekai.com | 2 |
| ping_match.gif?st=BLUEKAI&rurl=https%3A… | 204 | pm.w55c.net | 2 |
| pixel?google_nid=bluekai&google_cm&google… | 302 | cm.g.doubleclick.net | 2 |
| 2981?id=&google_gid=CAESEBfosel1BRb97… | 200 | tags.bluekai.com | 2 |
| 30089?limit=0&id=13c97f4e-6f61-43f9-b092-… | 200 | tags.bluekai.com | 2 |
| 3085?id=2859233672810674504& | 200 | tags.bluekai.com | 2 |
| ping_match.gif?st=BLUEKAI&rurl=https%3A… | 204 | pm.w55c.net | 2 |
| pixel?google_nid=bluekai&google_cm&google… | 302 | cm.g.doubleclick.net | 2 |
| 2981?id=&google_gid=CAESEBfosel1BRb97… | 200 | tags.bluekai.com | 2 |
| 926885548/?random=1699858502664&cv=11… | 200 | googleads.g.doubleclick.net | 2 |
| 926885548/?random=1699858602127&cv=11… | 200 | googleads.g.doubleclick.net | 2 |
| 926885548/?random=1699858594936&cv=11… | 200 | googleads.g.doubleclick.net | 2 |
| 926885548/?random=1699858586457&cv=11… | 200 | googleads.g.doubleclick.net | 2 |
| 926885548/?random=1699858578193&cv=11… | 200 | googleads.g.doubleclick.net | 2 |
| 41024?ret=html&limit=10&phint=pctx%3Dglobal | 200 | stags.bluekai.com | 2 |
| 77923?ret=html&phint=__bk_t%3DUFC%20R… | 200 | stags.bluekai.com | 2 |
| up?adv=herhwld&ref=https%3A%2F%2Fww… | 200 | insight.adsrvr.org | 2 |
| 41024?ret=html&limit=10&phint=pctx%3Dglobal | 200 | stags.bluekai.com | 2 |
| activityi;fledge=1;src=5405156;type=websi0;c… | 200 | td.doubleclick.net | 2 |
| pr?exlist=mp_nsln_sx_n-kr-new_n-improvedig… | 200 | s.amazon-adsystem.com | 2 |
| iu3?d=generic&ex-fargs=%3Fid%3Dfddf2e1f-… | 200 | aax-fe.amazon-adsystem.com | 2 |
| activityi;src=5405156;type=websi0;cat=2019e… | 302 | 5405156.fls.doubleclick.net | 2 |
| activityi;dc_pre=CKvstrGywIIDFbUwRAgdKhk… | 200 | 5405156.fls.doubleclick.net | 2 |
| controller-40215e40827dd438f51a3d1064282… | 200 | js.stripe.com | 2 |




| Name | Status | Domain | Cookies |
|---|---|---|---|
| 41024?ret=html&limit=10&phint=pctx%3Dglobal | 200 | stags.bluekai.com | 2 |
| activityi;fledge=1;src=6950741;type=ufcpt0;c… | 200 | td.doubleclick.net | 2 |
| activityi;fledge=1;src=8220823;type=invmedia… | 200 | td.doubleclick.net | 2 |
| 41024?ret=html&limit=10&phint=pctx%3Dran… | 200 | stags.bluekai.com | 2 |
| pr?exlist=mp_nsln_sx_n-kr-new_n-improvedig… | 200 | s.amazon-adsystem.com | 2 |
| activityi;src=5405156;type=ufctv0;cat=2019u… | 302 | 5405156.fls.doubleclick.net | 2 |
| activityi;dc_pre=CKz41d2ywlIDFbWN7gEdXs… | 200 | 5405156.fls.doubleclick.net | 2 |
| m-outer-27c67c0d52761104439bb051c7856a… | 200 | js.stripe.com | 2 |
| 77923?ret=html&phint=__bk_t%3DUFC%203… | 200 | stags.bluekai.com | 2 |
| collect | 204 | w.clarity.ms | 1 |
| heat.aspx?aid=6003212&url=https%3A%2F… | 200 | 6003212.global.siteimproveanal… | 1 |
| heat.aspx?aid=6003212&url=https%3A%2F… | 200 | 6003212.global.siteimproveanal… | 1 |
| image.aspx?ourl=https%3A%2F%2Fufc.com… | 200 | 6003212.global.siteimproveanal… | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 200 | w.clarity.ms | 1 |
| image.aspx?url=https%3A%2F%2Fwww.ufc.… | 200 | 6003212.global.siteimproveanal… | 1 |
| p?c1=2&c2=6035763&c3=&c4=&c5=&c6=&c1… | 200 | b.scorecardresearch.com | 1 |
| heat.aspx?aid=6003212&url=https%3A%2F… | 200 | 6003212.global.siteimproveanal… | 1 |
| heat.aspx?aid=6003212&url=https%3A%2F… | 200 | 6003212.global.siteimproveanal… | 1 |
| image.aspx?ourl=https%3A%2F%2Fwww.ufc… | 200 | 6003212.global.siteimproveanal… | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 200 | w.clarity.ms | 1 |
| image.aspx?url=https%3A%2F%2Fwww.ufc.… | 200 | 6003212.global.siteimproveanal… | 1 |
| p?c1=2&c2=6035763&c3=&c4=&c5=&c6=&c1… | 200 | b.scorecardresearch.com | 1 |
| 3668711 | 200 | answers.yext-pixel.com | 1 |
| heat.aspx?aid=6003212&url=https%3A%2F… | 200 | 6003212.global.siteimproveanal… | 1 |
| image.aspx?ourl=https%3A%2F%2Fwww.ufc… | 200 | 6003212.global.siteimproveanal… | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 200 | w.clarity.ms | 1 |
| image.aspx?url=https%3A%2F%2Fwww.ufc.… | 200 | 6003212.global.siteimproveanal… | 1 |
| p?c1=2&c2=6035763&c3=&c4=&c5=&c6=&c1… | 200 | b.scorecardresearch.com | 1 |
| 3668711 | 200 | answers.yext-pixel.com | 1 |
| heat.aspx?aid=6003212&url=https%3A%2F… | 200 | 6003212.global.siteimproveanal… | 1 |



hazka-vs-pereira-results-highlights-winner-interviews-new-york-city

Elements Console Sources Network Performance Memory Application Sec

Preserve log Disable cache No throttling

Filter Invert Hide data URLs Hide extension URLs All Doc JS F

Big request rows

Overview

| Name | Status | Domain | Cookies |
|---|---|---|---|
| heat.aspx?aid=6003212&url=https%3A%2F... | 200 | 6003212.global.siteimproveanal... | 1 |
| image.aspx?ourl=https%3A%2F%2Fwww.ufc... | 200 | 6003212.global.siteimproveanal... | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 200 | w.clarity.ms | 1 |
| image.aspx?url=https%3A%2F%2Fwww.ufc.... | 200 | 6003212.global.siteimproveanal... | 1 |
| p?c1=2&c2=6035763&c3=&c4=&c5=&c6=&c1... | 200 | b.scorecardresearch.com | 1 |
| 3668711 | 200 | answers.yext-pixel.com | 1 |
| collect | 204 | w.clarity.ms | 1 |
| image.aspx?ourl=https%3A%2F%2Fwww.ufc... | 200 | 6003212.global.siteimproveanal... | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 204 | w.clarity.ms | 1 |
| collect | 200 | w.clarity.ms | 1 |
| image.aspx?url=https%3A%2F%2Fwww.ufc.... | 200 | 6003212.global.siteimproveanal... | 1 |
| p?c1=2&c2=6035763&c3=&c4=&c5=&c6=&c1... | 200 | b.scorecardresearch.com | 1 |
| 3668711 | 200 | answers.yext-pixel.com | 1 |
| pixel.gif?https://s.amazon-adsystem.com/ec... | 200 | usersync.samplicio.us | 1 |
| load/?p=204&g=8888&j=0 | 204 | loadus.exelator.com | 1 |
| amazon?exid=zM_8d8uVSEmkyzoFz7nY0g&r... | 302 | crb.kargo.com | 1 |
| amazon?exid=T4DY2C-hSuOfbQxzSgAByA&r... | 302 | crb.kargo.com | 1 |
| pixel.gif?https://s.amazon-adsystem.com/ec... | 200 | usersync.samplicio.us | 1 |
| usermatch.gif?partner=amzn&partner_uid=W... | 204 | beacon.krxd.net | 1 |
| load/?p=204&g=8888&j=0 | 204 | loadus.exelator.com | 1 |
| amazon?exid=xSS4jWqrSpG5zpvQZGJdHw&... | 302 | crb.kargo.com | 1 |
| v2?partner=amzn | 400 | usermatch.krxd.net | 1 |
| pixel.gif?https://s.amazon-adsystem.com/ec... | 200 | usersync.samplicio.us | 1 |
| usermatch.gif?partner=amzn&partner_uid=W... | 204 | beacon.krxd.net | 1 |
| load/?p=204&g=8888&j=0 | 204 | loadus.exelator.com | 1 |
| pixel.gif?https://s.amazon-adsystem.com/ec... | 200 | usersync.samplicio.us | 1 |
| usermatch.gif?partner=amzn&partner_uid=Zp... | 204 | beacon.krxd.net | 1 |
| load/?p=204&g=8888&j=0 | 204 | loadus.exelator.com | 1 |
| amazon?exid=RtH9H6fdTtG98C-tEDePbg&r=... | 302 | crb.kargo.com | 1 |
| get?_url=https%3A%2F%2Fs.amazon-adsyst... | 302 | uipglob.semasio.net | 1 |
| v2?partner=amzn | 400 | usermatch.krxd.net | 1 |
| pixel.gif?https://s.amazon-adsystem.com/ec... | 200 | usersync.samplicio.us | 1 |
| load/?p=204&g=8888&j=0 | 204 | loadus.exelator.com | 1 |
| amazon?exid=q5TMxdiXT8qthOMC5d7okg&r... | 302 | crb.kargo.com | 1 |
| user | 302 | bttrack.com | 1 |




38. The screenshots above show the "Network" tab of Chrome Developer Tools, which contains a list of HTTP network traffic transmissions between the user's browser and various third-party websites while the user visited and interacted with Defendant's Website at https://www.ufc.com. The screenshots depict only network traffic occurring ***after*** the user **rejected all cookies** using the cookie banner. As shown above, despite the user's rejection of all cookies, the user's interactions with the Website resulted in the user's browser making a large number of GET and POST HTTP requests to third party web domains like www.facebook.com, www.google.com, dpm.demdex.net, and others. As further shown in the right-hand column of the screenshots, the user's browser sent cookies along with those HTTP requests to the third parties. These screenshots demonstrate that Defendant caused third-party cookie data and users' Private Communications to be intercepted by the Third Parties, even after consumers declined or rejected all cookies and tracking technologies by clicking or selecting the "Reject All" cookies button. All

of these network calls are made to the Third Parties without the user's knowledge, and despite the user's rejection of all cookies.

39. Plaintiffs' and other Website users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, were surreptitiously obtained by the Third Parties via these cookies.

40. As users interact with the Website, even after clicking or selecting the "Reject All" cookies button, thereby declining or rejecting the use of cookies and similar technologies to analyze site usage and assist in Defendant's marketing efforts, more data regarding users' behavior and communications are intercepted by the Third Parties, alongside the cookie data. The third-party cookies that Defendant wrongfully allows to be stored on users' devices and browsers, and to be intercepted by the Third Parties, cause the Third Parties to track and collect data on users' behaviors and communications, including Private Communications, on the Website. Because third-party cookies cause the Third Parties to track users' behavior across the Internet and across time, user data can be correlated and combined with other data sets to compile comprehensive user profiles that reflect consumers' behavior, preferences, and demographics (including psychological trends, predispositions, attitudes, intelligence, abilities, and aptitudes). These Third Parties monetize user profiles for advertising, sales, and marketing purposes to generate revenue and target advertising to Internet users. Advertisers can gain deep understanding of users' behavioral traits and characteristics and target those users with advertisements tailored to their consumer profiles and audience segments.

41. The Third-Party code that the Website causes to be loaded and executed by the user's browser constitutes a wiretap because, when it is executed, it causes the Third Parties—

separate and distinct entities from the parties to the conversations—to use cookies to eavesdrop upon, record, extract data from, and analyze conversations to which they are not parties. When the Third Parties use their respective wiretaps on Website users' Private Communications, the wiretaps are not like tape recorders or "tools" used by one party to record the other. The Third Parties each have the capability to use the contents of conversations they collect through their respective wiretaps for their own purposes as described in more detail below.

### C. The Private Communications Intercepted and Collected Through Third-Party Cookies on Defendant's Website.[2]

#### 1. Facebook Cookies.

42. Defendant causes third-party cookies to be transmitted to and from Website users' browsers and devices to and from the **www.facebook.com** domain, even after users elect to "Reject All" cookies. This domain is associated with Meta's digital advertising and analytics platform that collects user information via cookies to assist Meta in performing data collection, behavioral analysis, user retargeting, and analytics.[3] Meta serves targeted ads to web users across Meta's ad network, which spans millions of websites and apps.

43. Facebook's cookies help Meta track whether users complete specific actions after interacting with an ad (e.g., clicking a link or making a purchase) and provide analytic metrics that advertisers use to measure ad campaign performance. For example, the Website causes the following type of data to be sent to Meta when a Website user views a webpage:

[2] This section contains multiple examples of specific data being sent from a user's browser to third parties. Each example was collected after the user had clicked or selected the "Reject All" button.
[3] https://www.facebook.com/privacy/policies/cookies/.

GET https://www.facebook.com/tr/?id=351003319378605&ev=PageVie
200 ghlights-winner-interviews-new-york-city&rl=https%3A%2F%2F
0&o=4126&fbp=fb.1.1699858366786.1259985734&ler=empty&it=16

Request Header Query Body Cookies Raw | Summary +

| Key | Value |
|---|---|
| :authority | www.facebook.com |
| :method | GET |
| :path | /tr/?id=351003319378605&ev=PageView&dl=https%3A%2F%2Fwww.ufc.com%2Fnews%2Fufc-295-prochazka-vs-pereira-results-highlights-winner-interviews-new-york-city&rl=https%3A%2F%2Fwww.ufc.com%2F&if=false&ts=1699858602235&sw=2240&sh=1260&v=2.9.138&r=stable&ec=0&o=4126&fbp=fb.1.1699858366786.1259985734&ler=empty&it=1699858601870&coo=false&rqm=GET |
| :scheme | https |
| accept | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| accept-encoding | gzip, deflate, br |
| accept-language | en-US,en;q=0.9 |
| cookie | sb=fOVLZR0Xt0o9N5_8p_wZ5MjR; datr=fOVLZfR2FfnjjsD4-tymrtuF; locale=en_US; c_user=1345507951; dpr=2; xs=9%3AnDPKrgBzlw1grQ%3A2%3A1699472819%3A-1%3A2633%3A%3AAcVqv_qo3jAlEGSXwmb7ywcpHEuuEQd5uM-Q2Xil9w; fr=1W9V3kmOyZAiR4LP4.AWW0_6VH39xmSbJuDtqjAtc-5ww.BlUcfD.Hj.AAA.0.0.BlUcfD.AWUP6iwJ8eg |
| referer | https://www.ufc.com/ |
| sec-ch-ua | "Google Chrome";v="119", "Chromium";v="119", "Not?A_Brand";v="24" |
| sec-ch-ua-mobile | ?0 |
| sec-ch-ua-platform | "macOS" |
| sec-fetch-dest | image |
| sec-fetch-mode | no-cors |
| sec-fetch-site | cross-site |
| user-agent | Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/119.0.0.0 Safari/537.36 |
| Host | www.facebook.com |

GET 200 https://www.facebook.com/tr/?id=351003319378605&ev=PageVie
ghlights-winner-interviews-new-york-city&rl=https%3A%2F%2F
0&o=4126&fbp=fb.1.1699858366786.1259985734&ler=empty&it=16

Request Header Query Body Cookies Raw Summary +

| Key | Value |
|---|---|
| coo | false |
| dl | https://www.ufc.com/news/ufc-295-prochazka-vs-pereira-results-highlights-winner-interviews-new-york-city |
| ec | 0 |
| ev | PageView |
| fbp | fb.1.1699858366786.1259985734 |
| id | 351003319378605 |
| if | false |
| it | 1699858601870 |
| ler | empty |
| o | 4126 |
| r | stable |
| rl | https://www.ufc.com/ |
| rqm | GET |
| sh | 1260 |
| sw | 2240 |
| ts | 1699858602235 |
| v | 2.9.138 |

GET 200 https://www.facebook.com/tr/?id=351003319378605&ev=PageVie
ghlights-winner-interviews-new-york-city&rl=https%3A%2F%2F
0&o=4126&fbp=fb.1.1699858366786.1259985734&ler=empty&it=16

Request Header Query Body Cookies Raw Summary +

| Key | Value |
|---|---|
| sb | fOVLZR0Xt0o9N5_8p_wZ5MjR |
| datr | fOVLZfR2FfnjjsD4-tymrtuF |
| locale | en_US |
| c_user | 1345507951 |
| dpr | 2 |
| xs | 9%3AnDPKrgBzlw1grQ%3A2%3A1699472819%3A-1%3A2633%3A%3AAcVqv_qo3jAlEGSXwmb7ywcpHEuuEQd5uM-Q2Xil9w |
| fr | 1W9V3kmOyZAiR4LP4.AWW0_6VH39xmSbJuDtqjAtc-5ww.BlUcfD.Hj.AAA.0.0.BlUcfD.AWUP6iwJ8eg |

44. The "ev" parameter is short for "event." In this instance, the event is a "PageView."

45. The "dl" parameter is the "Document Location." It tells Facebook the specific webpage on which the Event occurred. In this example, the document location discloses to Facebook that the user was visiting the UFC news article regarding the Prochazka vs Pereira results.

46. The "ts" parameter corresponds to a "Timestamp," and tells Facebook the exact time—down to the millisecond—at which the user viewed the page.

47. The "fbp" parameter is the Facebook Browser ID, and is used to track the user's activity across the Internet.

48. Cookies are also sent along with all data transmissions to Meta, even after users reject them. For instance, as shown above, the "c_user" cookie was sent to Facebook along with the PageView event. The "c_user "cookie stores a user's unique ID, which is associated with their Facebook profile. This ID enables Facebook to track user interactions on its platform and across sites that use Facebook plugins, such as adding items to a cart, clicking "Like" buttons, or engaging with comment sections. When combined with other data sent to the Facebook domain, this cookie allows Meta to track users' browsing activities. Facebook uses this data for various purposes, such as personalizing content, enhancing ad targeting accuracy, and refining its user experience.

49. In addition, as shown above, the "user-agent" header is sent to Meta as part of all data transmissions. The "user-agent" header enables Meta to determine the user's device type, browser, and operating system. Further, the user's IP address is sent to Meta, enabling Meta to determine the user's geolocation—including whether the user is located in California.

50. In particular, by identifying users who have shown interest in certain products or content, the facebook.com cookies enable advertisers using Meta's advertising platform to show

relevant ads to those users when they visit other websites within Meta's ad network.[4] These cookies allow Meta to collect data on how users interact with websites, regardless of whether they have a Facebook account or are logged in.[5]

51. The facebook.com cookies allow Meta to obtain and store at least the following user data: (i) browsing history, (ii) visit history, (iii) website interactions, (iv) user input data, (v) demographic information, (vi) interests and preferences, (vii) shopping behaviors, (viii) device information, (ix) referring URLs, (x) session information, (xi) user identifiers, and (xii) geolocation data (including IP addresses, which reveal whether a user is located in California).[6]

52. Meta utilizes the data collected through the facebook.com cookies for its own purposes, including by using the data to tailor content and target advertisements to users. This includes practices such as (i) Ad Targeting and Retargeting, in which Meta uses the facebook.com cookie to track users' online behavior across different sites, building a profile based on their browsing habits, purchases, and interactions. This profile enables Facebook to deliver highly targeted ads within the Facebook ecosystem and on other sites that are part of Facebook's Audience Network; (ii) Conversion Tracking, in which Meta uses the facebook.com cookie to enable business partners to track specific actions users take after viewing or clicking on a Facebook ad, such as making a purchase or signing up for a newsletter; (iii) Audience Insights and Analytics, in which Meta uses the facebook.com cookie to provide data to businesses on user demographics, interests, and behaviors across their sites and apps; and (iv) Cross-Device and Cross-Platform Tracking, in which Meta uses the facebook.com cookie to support tracking users across devices and platforms, so that ads are targeted consistently regardless of the device a user is on. This ensures that advertisers can follow users across devices.

[4] *Id.*; https://allaboutcookies.org/what-data-does-facebook-collect.
[5] https://allaboutcookies.org/what-data-does-facebook-collect.
[6] *Id.*

**2. Google Cookies.**

53. Defendant causes third-party cookies to be transmitted to and from Website users' browsers and devices, even after users "Reject All" cookies, to and from the **td.doubleclick.net**, **www.google.com**, **analytics.google.com**, **adservice.google.com**, and **www.youtube.com** domains. Each of these domains is associated with Google LLC's digital advertising and analytics platform that collects user information via cookies to assist Google in performing data collection, behavioral analysis, user retargeting, and analytics.[7] Google serves targeted ads to web users across Google's ad network, which spans millions of websites and apps. Nearly 20% of web traffic is tracked by Google's DoubleClick cookies.[8] Google's cookies help it track whether users complete specific actions after interacting with an ad (e.g., clicking a link or making a purchase) and provide analytic metrics that advertisers use to measure ad campaign performance. Further, by identifying users who have shown interest in certain products or content, Google's cookies cause its advertising platform to enable advertisers to show relevant ads to those users when they visit other websites within Google's ad network.[9]

54. Specifically, Google sends cookies when a web user visits a webpage that shows Google Marketing Platform advertising products and/or Google Ad Manager ads.[10] "Pages with Google Marketing Platform advertising products or Google Ad Manager ads include ad tags that instruct browsers to request ad content from [Google's] servers. When the server delivers the ad content, it also sends a cookie. But a page doesn't have to show Google Marketing Platform advertising products or Google Ad Manager ads for this to happen; it just needs to include Google

[7] *See* Our advertising and measurement cookies (available at https://business.safety.google/adscookies/).
[8] *See, e.g.* https://www.ghostery.com/whotracksme/trackers/doubleclick.
[9] *See, e.g.* About cross-channel remarketing in Search Ads 360 (available at https://support.google.com/searchads/answer/7189623?hl=en); About dynamic remarketing for retail (available at https://support.google.com/google-ads/answer/6099158?hl=en&sjid=1196213575075458908-NC).
[10] *See* How Google Marketing Platform advertising products and Google Ad Manager use cookies (available at https://support.google.com/searchads/answer/2839090?hl=en&sjid=1196213575075458908-NC); *see also* Cookies and user identification (available at https://developers.google.com/tag-platform/security/concepts/cookies).

Marketing Platform advertising products or Google Ad Manager ad tags, which might load a click tracker or impression pixel instead." *Id.* As Google explains, "Google Marketing Platform advertising products and Google Ad Manager send a cookie to the browser after any impression, click, or other activity that results in a call to our servers." *Id.*

55. Google also uses cookies in performing analytical functions. As Google explains, "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]."[11] "To measure a website … [one] add[s] a small piece of JavaScript measurement code to each page on [a] site." *Id.* Then, "[e]very time a user visits a webpage, the tracking code will collect … information about how that user interacted with the page." *Id.* Google Analytics enables website owners to "measure when someone loads a page, clicks a link, [ ] makes a purchase;" "completes a purchase"; "searches [] website or app"; "select content on [] website or app"; "views an item"; and "views their shopping cart."[12]

56. Google's cookies allow it to obtain and store at least the following user data: (i) browsing history, (ii) visit history, (iii) website interactions, (iv) user input data, (v) demographic information, (vi) interests and preferences, (vii) shopping behaviors, (viii) device information, (ix) referring URLs, (x) session information, (xi) user identifiers, and (xii) geolocation data—including whether a user is located in California.[13]

---

[11] How Google Analytics Works (available at https://support.google.com/analytics/answer/12159447?hl=en).

[12] Set up events (available at https://developers.google.com/analytics/devguides/collection/ga4/events); and Recommended events (available at https://developers.google.com/analytics/devguides/collection/ga4/events).

[13] *See* About the Google Tag (available at https://support.google.com/searchads/answer/7550511?hl=en); How Floodlight Recognizes Users (available at https://support.google.com/searchads/answer/2903014?hl=en); How Google Ads tracks website conversions (available at https://support.google.com/google-ads/answer/7521212); Google Ads Help, Cookie: Definition (available at https://support.google.com/google-ads/answer/2407785?hl=en); About demographic targeting in Google Ads (available at https://support.google.com/searchads/answer/7298581?hl=en&sjid=1196213575075458908-NC&visit_id=638670675669576522-2267083756&ref_topic=7302618&rd=1); How Google Analytics Works (https://support.google.com/analytics/answer/12159447); Set up events (available at https://developers.google.com/analytics/devguides/collection/ga4/events); and Recommended events (available at https://support.google.com/analytics/answer/9267735).

57. For example, the Google software code that Defendant causes to be stored on and executed by the Website user's device causes the following data to be sent to Google's domain, at doubleclick.net:

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**



| | |
|---|---|
| cookie | IDE=AHWqTUmHHcqCAfQoVu5R0XD7IEcOvl8yEYuQMK6yjyeSLf 5VX2JWc_7EwqhX-018; ar_debug=1 |
| origin | https://imasdk.googleapis.com |
| referer | https://imasdk.googleapis.com/ |
| sec-ch-ua | "Google Chrome";v="119", "Chromium";v="119", "Not?A_Brand";v="24" |
| sec-ch-ua-mobile | ?0 |
| sec-ch-ua-platform | "macOS" |
| sec-fetch-dest | empty |
| sec-fetch-mode | cors |
| sec-fetch-site | cross-site |
| user-agent | Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/119.0.0.0 Safari/537.36 |
| x-client-data | CJS2yQEIpbbJAQipncoBCMTnygEIlqHLAQiGoM0BCOjFzQEIusjNARj1yc0BGOuNpRc= |
| Host | pubads.g.doubleclick.net |

GET

200

```
https://pubads.g.doubleclick.net/gampad/ads?iu=%2F5458%2
s-pereira-results-highlights-winner-interviews-new-york-
sz=1x1000&unviewed_position_start=1&sdkv=h.3.603.0&osd=2
68x60%2C480x70%2C728x90&is_amp=0&uach=WyJtYWNPUyIsIjEzL
vbWUiLCIxMTkuMC42MDQ1LjEyMyJdLFsiQ2hyb21pdW0iLCIxMTkuMC4
tt=20&adk=892558095&sdk_apis=2%2C7%2C8&omid_p=Google1%2F
2C44777649%2C44781409%2C44802074%2C44802463%2C44806075&
ochazka-vs-pereira-results-highlights-winner-interviews-
%3D1699858366%3AS%3DALNI_Mbgi2FHqORAdsR2f6AMn0VTUJGE4g&
P0-cbnCaK-Ej21YCrk52A&scor=4106042303050518&ged=ve4_td4_
```

**Request** Header Query Body Cookies Raw Summary +

| Key | Value |
|---|---|
| adk | 892558095 |
| afvsz | 200x200,250x250,300x250,336x280,450x50,468x60,480x70,728x90 |
| cookie | ID=cdac562edd117f16:T=1699858366:RT=1699858366:S=ALNI_Mbgi2FHqORAdsR2f6AMn0VTUJGE4g |
| correlator | 4422350930993286 |
| ctv | 0 |
| description_url | https://www.ufc.com/news/ufc-295-prochazka-vs-pereira-results-highlights-winner-interviews-new-york-city |
| dt | 1699858604812 |
| eid | 44772139,44776495,44777649,44781409,44802074,44802463,44806075 |
| env | vp |
| frm | 0 |
| gdfp_req | 1 |
| ged | ve4_td4_tt2_pd4_la4000_er0.0.0.0_vi0.0.979.501_vp0_ts1_eb16491 |
| gpic | UID=00000a48509fddbf:T=1699858366:RT=1699858366:S=ALNI_MYdm_0SeP0-cbnCaK-Ej21YCrk52A |

| | |
|---|---|
| hl | en |
| is_amp | 0 |
| iu | /5458/zuffa.ufc |
| nel | 1 |
| npa | 0 |
| omid_p | Google1/h.3.603.0 |
| osd | 2 |
| output | xml_vast4 |
| ptt | 20 |
| ref | https://www.ufc.com/ |
| scor | 4106042303050518 |
| sdk_apis | 2,7,8 |
| sdki | 445 |
| sdkv | h.3.603.0 |
| sdr | 1 |
| sid | 1A11E135-0F6C-40BF-96AA-A7BD3A031684 |
| sz | 1x1000 |
| tfcd | 0 |
| u_so | l |
| uach | WyJtYWNPUyIsIjEzLjUuMCIsImFybSIsIiIsIjExOS4wLjYwNDUuMTIzIixudWxsLDAsbnVsbCwiNjQiLFtbIkdvb2dsZSBDaHJvbWUiLCIxMTkuMC42MDQ1LjEyMyJdLFsiQ2hyb21pdW0iLCIxMTkuMC42MDQ1LjEyMyJdLFsiTm90P0FfQnJhbmQiLCIyNC4wLjAuMCJdXSwwXQ.. |
| unviewed_position_start | 1 |
| url | https://www.ufc.com/news/ufc-295-prochazka-vs-pereira-results-highlights-winner-interviews-new-york-city |
| vis | 1 |

GET
200

https://pubads.g.doubleclick.net/gampad/ads?iu=%2F5458%2F
s-pereira-results-highlights-winner-interviews-new-york-c
sz=1x1000&unviewed_position_start=1&sdkv=h.3.603.0&osd=2&
68x60%2C480x70%2C728x90&is_amp=0&uach=WyJtYWNPUyIsIjEzLjU
vbWUiLCIxMTkuMC42MDQ1LjEyMyJdLFsiQ2hyb21pdW0iLCIxMTkuMC42
tt=20&adk=892558095&sdk_apis=2%2C7%2C8&omid_p=Google1%2Fh
2C44777649%2C44781409%2C44802074%2C44802463%2C44806075&re
ochazka-vs-pereira-results-highlights-winner-interviews-n
%3D1699858366%3AS%3DALNI_Mbgi2FHqORAdsR2f6AMn0VTUJGE4g&gp
P0-cbnCaK-Ej21YCrk52A&scor=4106042303050518&ged=ve4_td4_t

**Request** Header Query Body Cookies Raw Summary +

| Key | Value |
|---|---|
| IDE | AHWqTUmHHcqCAfQoVu5R0XD7IEcOvl8yEYuQMK6yjyeSLf5VX2JWc_7EwqhX-O18 |
| ar_debug | 1 |

58. The "npa" parameter refers to "Non-Personalized Ads." When npa is set to 1, it indicates non-personalized ads preference is enabled. Here, npa is set to 0, indicating that standard (personalized) ads are enabled.

59. The "description_url" and "url" parameters disclose to Google the exact webpage and title that the user was viewing.

60. Even after users reject cookies, the "IDE" cookie is sent to Google, as shown above. Google documentation confirms that the "IDE" cookie is used for advertising. Specifically, it is "used to show Google ads on non-Google sites."[14]

61. The "user-agent" header is also sent to Google, as shown above. As discussed above with respect to Meta, the "user-agent" corresponds to the device and browser that the user has used to access the Website.

62. Finally, the data sent to Google contains the user's IP address, which can be (and is) used to determine whether a user is located in California.

63. Because Google's cookies operate across multiple sites (i.e., cross-site tracking), the cookies enable Google to track users as they navigate from one site to another, and to comprehensively observe and evaluate user behavior online. Google's advertising platform aggregates user data to create consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics and audience segments based on shared traits (such as females, Millennials, etc.), and to perform targeted advertising and marketing analytics.

64. Thus, the Google cookies used on the Website enable Google to track users' interactions with advertisements to help advertisers understand how users engage with ads across different websites. Further, the user data collected through the cookie enables the delivery of

---

[14] https://policies.google.com/technologies/cookies?hl=en-US.

personalized ads based on user interests and behaviors. For instance, if a user frequently visits travel-related websites, Google will show her more travel-related advertisements. The collected data is used to generate reports for advertisers, helping them assess the performance of their ad campaigns and make data-driven decisions (such as renaming their products). Google's advertising platform also enables advertisers to retarget marketing, which Google explains allows advertisers to "show previous visitors ads based on products or services they viewed on your website. With messages tailored to your audience, dynamic remarketing helps you build leads and sales by bringing previous visitors back to your website to complete what they started."[15]

65. Further, in its "Shared Data Under Measurement Controller-Controller Data Protection Terms," Google states: "Google can access and analyze the Analytics data customers share with us to better understand online behavior and trends, and improve our products and services—for example, to improve Google search results, detect and remove invalid advertising traffic in Google Ads, and test algorithms and build models that power services like Google Analytics Intelligence that apply machine-learning to surface suggestions and insights for customers based on their analytics data and like Google Ads that applies broad models to improve ads personalization and relevance. These capabilities are critical to the value of the products we deliver to customers today."[16] Thus, Google has the capability to use the data it collects for understanding online behavior and trends, machine learning, and improving its own products and services.

**3. Adobe Cookies.**

66. Defendant also causes third-party cookies to be transmitted to and from Website users' browsers and devices, even after users "Reject All" cookies, to and from the

[15] Dynamic remarketing for web setup guide (available at https://support.google.com/google-ads/answer/6077124).
[16] Shared Data Under Measurement Controller-Controller Data Protection Terms (available at https://support.google.com/analytics/answer/9024351).

**dpm.demdex.net** domain. This domain is associated with Adobe Inc.'s Audience Manager, a data management platform, Adobe's Marketing Cloud, and Adobe's Experience Cloud Identity Service, a service which provides a universal, persistent ID to identify visitors across all Adobe products.

67. These cookies are used to assign a unique identifier to each site visitor, which enables Adobe to consistently recognize and track users across different sessions and domains (i.e., cross-site tracking) and collect and synchronize user data to comprehensively observe and evaluate user behavior online.[17] These cookies enable Adobe to obtain and store at least the following user data: (i) user identifier; (ii) website interactions; (iii) browsing history; (iv) visit history; (v) interests and preferences; and (vi) session information.[18]

68. Adobe aggregates this cookie data with other data from multiple channels and devices, including web analytics, CRM systems, and e-commerce platforms, to create consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics, create audience segments based on shared traits (such as Millennials, tech enthusiasts, etc.), and to enable targeted advertising and marketing analytics.[19]

69. For example, the Adobe software code that Defendant causes to be stored on and executed by the Website user's device causes the following data to be sent to Adobe's domain, at demdex.net:

---

[17] *See, e.g.,* Adobe Experience League: Adobe Analytics cookies (available at https://experienceleague.adobe.com/en/docs/core-services/interface/data-collection/cookies/analytics); *see also* Adobe Experience League: Audience Manager cookies (available at https://experienceleague.adobe.com/en/docs/core-services/interface/data-collection/cookies/audience-manager).

[18] *See, e.g.,* Adobe Audience Manager User Guide: Data Collection Components (available at https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/reference/system-components/components-data-collection).

[19] *See, e.g.*, Adobe Audience Manager User Guide: Understanding Calls to the Demdex Domain (available at https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/reference/demdex-calls); Adobe Experience Cloud Identity Service overview (available at https://experienceleague.adobe.com/en/docs/id-service/using/intro/overview); Adobe Audience Manager Features (available at https://business.adobe.com/products/audience-manager/features.html); *see also* Audience Manager Overview (available at https://experienceleague.adobe.com/en/docs/audience-manager/user-guide/overview/aam-overview).

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

GET 302 Found https://dpm.demdex.net/ibs:dpid=139200&dpuuid Dadobe.com%26id%3D%24%7BDD_UUID%7D

Request Header Query Body Cookies Raw Summary +

| Key | Value |
|---|---|
| Accept | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| Accept-Encoding | gzip, deflate, br |
| Accept-Language | en-US,en;q=0.9 |
| Connection | keep-alive |
| Cookie | demdex=41513039665673213294194805977825910630; dpm=41513039665673213294194805977825910630; dextp=21-1-1699843392560\|269-1-1699843393485\|470-1-1699843394485\|178522-1-1699843395484 |
| Host | dpm.demdex.net |
| Sec-Fetch-Dest | image |
| Sec-Fetch-Mode | no-cors |
| Sec-Fetch-Site | cross-site |
| User-Agent | Mozilla/5.0 (Macintosh; Intel Mac OS X 10_15_7) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/119.0.0.0 Safari/537.36 |
| sec-ch-ua | "Google Chrome";v="119", "Chromium";v="119", "Not?A_Brand";v="24" |
| sec-ch-ua-mobile | ?0 |
| sec-ch-ua-platform | "macOS" |

GET 302 Found https://dpm.demdex.net/ibs:dpid=139200&dpuuid Dadobe.com%26id%3D%24%7BDD_UUID%7D

Request Header Query Body Cookies Raw Summary +

| Key | Value |
|---|---|
| demdex | 41513039665673213294194805977825910630 |
| dpm | 41513039665673213294194805977825910630 |
| dextp | 21-1-1699843392560\|269-1-1699843393485\|470-1-1699843394485\|178522-1-1699843395484 |

70. The "demdex" cookie contains a unique user ID, enabling Adobe to identify the user browsing the Website, and to track that user across multiple domains. Adobe's documentation[20] depicts this as follows:

[20] https://experienceleague.adobe.com/en/docs/id-service/using/intro/id-request.




71. Further, as shown above, the Adobe software code that Defendant causes to be stored on and executed by the user's device causes the user's "user-agent" information to be sent to Adobe.

72. Finally, every data transmission to Adobe also contains the user's IP address.

**4. Microsoft Bing Cookies.**

73. Defendant also causes third-party cookies to be transmitted to and from Website users' browsers and devices, even after users elect to "Reject All" cookies, to and from the **bat.bing.com** domain. "The webpage bat.bing.com is a host for Bing Ads Conversion tracking code. This webpage is owned by Microsoft[.]"[21] The domain is associated with Bing, Microsoft's search engine, as well as Microsoft's digital advertising and analytics platforms. When a webpage loads a bat.bing.com cookie, it "tells Microsoft Advertising about the user visits to [the] webpage."[22] Microsoft uses bat.bing.com cookies to "record[] what customers do on [a] website and send[] that information to Microsoft Advertising." [23] Microsoft then serves targeted ads to web users across its extensive ad networks, which utilizes its "rich" supply of gathered data to "reach more than a billion people[.]"[24]

---

[21] https://answers.microsoft.com/en-us/msadvs/forum/all/does-batbing-track-your-browser-searches-and-sites/0a402f00-60c2-4d54-bd7d-81b67ccc7f13.
[22]https://help.ads.microsoft.com/apex/index/3/en/56959#:~:text=The%20most%20important%20request%20is,making%20when%20your%20webpage%20loads.
[23] https://help.ads.microsoft.com/#apex/ads/en/56960/1.
[24] https://answers.microsoft.com/en-us/msadvs/forum/all/opt-out-of-audience-ads/753bc0fc-c04f-4e20-a94a-abaa950ccf31#:~:text=When%20you%20come%20to%20Microsoft,and%20rich%20first%2Dparty%20data.

74. Bat.bing.com cookies collect consumers' (i) search history and browsing history, (ii) visit history, (iii) website interactions, (iv) user input data, (v) demographic information (including zip code[25]; gender[26]; age[27] (including identifying whether that person is a minor or not)); (vi) interests and preferences, (vii) shopping behaviors, (viii) device information, (ix) referring URLs, (x) session information, (xi) user identifiers, and (xii) geolocation data (including IP addresses, which reveal whether a user is located in California). Bat.bing.com updates this information each time a user clicks on a website hosting a third-party bat.bing.com cookie. Bat.bing.com keeps this user data for six months.

75. Bat.bing.com cookies help Microsoft track users' interactions with ads (e.g., clicking a link or making a purchase) and provide valuable metrics that advertisers use to measure ad campaign performance. Further, bat.bing.com cookies allow Microsoft to obtain and store user data to "help [website owners] focus a campaign or ad group on potential audiences who meet [website owners'] specific criteria, so [website owners] can increase the chance that [consumers] see [website owners'] ads."[28] Further, bat.bing.com offers [website owners] valuable "conversion tracking," which is a "measure [of] the ROI (return on investment) of your advertising campaign by letting [website owners] assign a monetary value to the activities people complete on [Defendant's] website after clicking [website owners'] ad."[29]

76. Microsoft also utilizes bat.bing.com data for its own purposes, including by using the data to tailor content and target advertisements to users. This profile enables Microsoft to deliver highly targeted ads within Microsoft's extensive advertising network. Microsoft's revenue from its advertising network program has exceeded $10 billion as of 2022.[30]

---

[25] https://help.ads.microsoft.com/#apex/ads/en/60212/0.
[26] *Id.*
[27] *Id.*
[28] https://help.ads.microsoft.com/#apex/ads/en/60212/0.
[29] https://help.ads.microsoft.com/#apex/ads/en/56680/2.
[30] https://digiday.com/media/microsofts-ad-revenue-hit-10b-and-its-investing-is-a-sleeping-giant-about-to-wake/.

**5. Microsoft Clarity Cookies.**

77. Defendant also causes third-party cookies to be transmitted to and from Website users' browsers and devices, even after users click or select the "Reject All" cookies button, to and from the **clarity.ms** domain. This domain is associated with Clarity, Microsoft's "cutting-edge behavioral analytics tool that helps you understand user interaction with your website or app."[31] Clarity is a Microsoft Advertising tool that Microsoft describes as "crucial for successful marketing."[32] "Clarity's tracking code … uses a cookie to obtain user session data." [33]

78. Clarity allows Defendant to "watch live users in action" via "recordings of live user interactions" on the website, including a user's "clicks or taps, scrolling, navigation, and more."[34] Indeed, Clarity boasts that it "tracks all visitor clicks and scrolls on mobile, desktop, and tablet[.]" These "session recordings" track each and every consumer's individual actions on the website.[35]




79. Further, Clarity permits Defendant to aggregate individual users' session recordings into "heatmaps" for Defendant's financial gain. Heatmaps are "visualization tool[s]" aimed at "aggregat[ing] information about how users interact with the website." [36] This allows

---

[31] https://learn.microsoft.com/en-us/clarity/setup-and-installation/about-clarity.
[32] https://about.ads.microsoft.com/en/blog/post/october-2021/introducing-microsoft-clarity-insights-for-microsoft-advertising.
[33] https://learn.microsoft.com/en-us/clarity/setup-and-installation/cookie-consent.
[34] https://clarity.microsoft.com/session-recordings.
[35] https://clarity.microsoft.com/session-recordings.
[36] https://learn.microsoft.com/en-us/clarity/heatmaps/heatmaps-overview.

Defendant to "See at a glance which areas on [web site owner's] page drive the most engagement," a crucial element to increasing advertising revenue.[37] Clarity also permits Defendant to "track a specific subset of users," including tracking metrics like what browser users visited from, what type of device, the date, and more. Clarity even permits the use of specific "Clarity user ID[s]" which permits Clarity to track users across their devices, and identify when the same user visits multiple times to the website.[38] Businesses use Clarity to "make data-driven decisions" to "improve overall conversion rates" of clicks, engagement, or sales.[39] Microsoft notes in a Clarity case study that Clarity cookies permitted businesses to see a "substantial increase" in "purchases."[40] In one instance, "following just five days after implementing Clarity, the [business] saw an uplift of 19% in conversion rate."[41] Businesses consider Clarity a "must-have tool for any business serious about optimizing their website and increasing online revenue."[42]

80. Microsoft collects data from Clarity,[43] which "Microsoft retains . . . for as long as necessary[.]"[44] Clarity cookies allow Microsoft to obtain and store at least the following user data: (i) user identifier; (ii) website interactions; (iii) interests and preferences; (iv) shopping behavior; (v) device information; (vi) demographic data; (vii) geolocation data (including whether a user is located in California); (viii) referring URL; and (ix) session information. [45]

---

37 https://clarity.microsoft.com/heatmaps.
38 https://clarity.microsoft.com/insights; https://learn.microsoft.com/en-us/clarity/setup-and-installation/identify-api.
39 https://clarity.microsoft.com/case-studies/ecommerce-boost/#:~:text=Using%20Clarity&text=By%20analyzing%20user%20sessions%20and,and%20improve%20overall%20conversion%20rates.
40 *Id.*
41 *Id.*, emphasis in original.
42 https://clarity.microsoft.com/case-studies/ecommerce-boost/#:~:text=Using%20Clarity&text=By%20analyzing%20user%20sessions%20and,and%20improve%20overall%20conversion%20rates.
43 https://www.microsoft.com/en-us/privacy/privacystatement.
44 *Id.*
45 https://learn.microsoft.com/en-us/clarity/setup-and-installation/clarity-data.

**6. Taboola Cookies.**

81. Defendant causes third-party cookies to be transmitted to and from Website users' browsers and devices, even after users click or select the "Reject All" button, to and from the **sync.taboola.com** domain. This domain is associated with Taboola, Inc., "one of the world's leading performance advertising platforms for the open web. Through our exclusive partnerships with many of the world's top websites, we help advertisers engage with over 600 million unique daily active users."[46] "Taboola's platform is powered by Deep Learning technology that uses Taboola's unique data about people's interests and information consumption to recommend the right content to the right person at the right time."[47] Taboola's technology learns user engagement patterns by analyzing data it collects using cookies about user "reading preferences, browsing history, device, location, time of day and more..."[48]

82. Taboola cookies enable it to obtain and store at least the following user data: browsing history, visit history, website interactions, user input data (such as email addresses), demographic information (such as gender and age), interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers (i.e., "cookie IDs"), and/or geolocation data.[49] This data allows Defendant to target its advertising campaigns to users based on user "location, time, browser type, connection type, audience segments, and more."[50]

83. Taboola explains in its Privacy Policy the user data it receives from cookies installed on its customers' websites (such as Defendant's Website) and how it uses (and monetizes) that data to create audience segments as follows:

---

[46] *See* https://help.taboola.com/hc/en-us/articles/115006597307-How-Taboola-Works#.
[47] *Id.*
[48] *Id.*
[49] Taboola Privacy Policy (available at https://www.taboola.com/policies/privacy-policy#information-we-collect-from-users-user-information); *see also* Taboola Cookie Policy (available at https://www.taboola.com/policies/cookie-policy).
[50] *See* https://help.taboola.com/hc/en-us/articles/115006597307-How-Taboola-Works#; *see also* https://help.taboola.com/hc/en-us/articles/115001936293-Targeting-Marketplace-Audiences#.

> We use User Information for the following purposes: … **Offering our Customers data segments that help target content and advertisements for topics, products, and services that may interest you.** A data segment is a grouping of users who share one or more attributes (e.g., travel enthusiasts). We offer a number of data segments, both proprietary and from our data partners, to our Customers so that they may better target Users who are more likely to be interested in their content and advertisements. Taboola does not knowingly create segments that are based upon what we consider to be sensitive information (for example, Personal Data revealing your racial or ethnic origin or your religious affiliations, or Personal Data concerning your sensitive health information, sex life or sexual orientation, or genetic or biometric data). In connection with our Services, our Customers may use these standard health-related segments about non-sensitive conditions such as an inferred interest in health and wellness or over the counter medications. In addition, Taboola offers our Customers standard political-related segments that may indicate general political sentiment, interest in specific political issues, and political party affiliation.[51]

**7. Additional Third-Party Cookies.**

84. Defendant also causes third-party cookies to be transmitted to and from Website users' browsers and devices, even after users elect to "Reject All" cookies, to and from other domains, including (i) ib.adnxs.com; (ii) pubmatic.com; (iii) insight.adsrvr.org; (iv) b.scorecardresearch.com; (v) aax-fe.amazon-adsystem.com; (vi) hb.yahoo.net and ups.analytics.yahoo.com; (vii) pixel.rubiconproject.com; (viii) dsum-sec.casalemedia.com; (ix) us-u.openx.net; (x) bluekai.com; and (xi) stackadapt.com.

85. The **ib.adnxs.com** domain is associated with AppNexus, owned by Microsoft. Microsoft uses adnxs.com cookies to collect data on user navigation and behavior on websites, including information on user preferences and/or interaction with web-campaign content, to target advertisements.[52] The cookies include unique identifiers that help Microsoft recognize users across different websites and sessions.[53] This allows cookies set from the adnxs.com domain to collect data, including IP address, user demographic information, geographic location, page

---

[51] Taboola Privacy Policy (available at https://www.taboola.com/policies/privacy-policy#information-we-collect-from-users-user-information) (emphasis in original).

[52] https://cookiepedia.co.uk/host/adnxs.com.

[53] https://learn.microsoft.com/pdf?url=https%3A%2F%2Flearn.microsoft.com%2Fen-us%2Fxandr%2Fmonetize%2Ftoc.json.

views, and interactions with websites.[54] These cookies also enable Household Attribution, a feature that enables Microsoft to match ads served on any device to website activity occurring on any device connected to the same network using the same IP address.[55] Further, the cookies enable advertisers to track the effectiveness of campaigns and avoid showing the same ads repeatedly to the same users. Microsoft uses this data to personalize ad content and track users across the internet. Adnxs.com cookies also categorize users into different segments based on their interests, demographics, or behaviors. This segmentation is used to target specific audiences with tailored ads. The data collected by cookies set through the adnxs.com domain has allowed Microsoft to set up a platform in which advertisers can bid for and place advertisements targeted at users based on a variety of demographics, including, among other things, demography, device type, and location.[56]

86. The **pubmatic.com** domain (and its subdomains) is associated with PubMatic, Inc., a digital advertising company.[57] PubMatic uses pubmatic.com cookies to collect data on user behavior on websites including user interactions with advertising content.[58] PubMatic uses this data to personalize advertising content and track users across the internet.[59]

87. The **insight.adsrvr.org** domain is associated with The Trade Desk, Inc., a digital advertising company that offers a cloud-based ad-buying platform that enables businesses to plan, manage, optimize, and measure data-driven digital advertising campaigns.[60] The Trade Desk uses insight.adsrvr.org cookies to collect data on users such as their geographic locations, the type of device users are using, and users' interests as inferred from their web browsing or app usage

---

[54] *Id.*; https://www.microsoft.com/en-us/privacy/privacystatement#mainpersonaldatawecollectmodule.
[55] https://learn.microsoft.com/pdf?url=https%3A%2F%2Flearn.microsoft.com%2Fen-us%2Fxandr%2Fmonetize%2Ftoc.json.
[56] https://learn.microsoft.com/en-us/xandr/monetize/buy-side-targeting#other-targeting-guidance.
[57] *See* www.metrixlab.com.
[58] *See*, PubMatic, Inc. Form 10-K for year ending December 31, 2023 (Filed February 28, 2024) at 17–18.
[59] *Id.*
[60] *See* The Trade Desk, Inc. 2023 Form 10-K (filed February 15, 2024).

activity.[61] This data helps The Trade Desk personalize ad content and track users across the internet.[62]

88. The Trade Desk acknowledges that its cookies' ability "to collect, augment, analyze, use and share data relies upon the ability to uniquely identify devices across websites and applications, and to collect data about user interactions with those devices for purposes such as serving relevant ads and measuring the effectiveness of ads."[63]

89. The **b.scorecardresearch.com** domain is associated with Comscore, Inc.'s Scorecard Research service, a "leading global market research effort that studies and reports on Internet trends and behavior."[64] The b.scorecardresearch.com domain collects a user's online identifiers ("e.g., cookie identifiers, other hardware or device identifiers, and IP addresses"), geolocation data, browsing history, operating system, browser type, website preferences, and the duration and time of the user's website access.[65] Scorecard Research then processes "the information collected . . . to draw inferences about [users] predicted characteristics and preferences,"[66] which it then sells to businesses.[67] Scorecard Research then sells this collected data to website owners for a profit.

90. The **aax-fe.amazon-adsystem.com** domain is associated with Amazon's advertising services. Amazon utilizes cookies to collect data on user interactions with websites (including browsing behavior and preferences) to perform advertising and personalization functions, i.e., to assist Amazon in delivering advertisements tailored to user interests. Further,

[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] ScorecardResearch website (available at https://www.scorecardresearch.com/).
[65] ScorecardResearch Privacy Policy (last updated June 1, 2023) (available at https://www.scorecardresearch.com/privacy.aspx?newlanguage=1).
[66] *Id.*
[67] ScorecardResearch About page (available at https://www.scorecardresearch.com/about.aspx?newlanguage=1).

the cookies perform analytics functions to enable Amazon to measure and analyze the performance of its services and to ensure that ads are effective and relevant.

91. The **hb.yahoo.net** and **ups.analytics.yahoo.com** domains are owned by Yahoo, Inc., a technology company that focuses on online media and advertising. Cookies set by the yahoo.net and yahoo.com domains are used to target website users with advertising by assigning Website users unique identifiers.[68] These cookies collect information, such as IP addresses, browser type and settings, operating system, device type, and advertising identifiers from other third parties, including Apple's ID for Advertising, Apple's ID for vendors, Google's Android ID, and Google's Play Store Ad ID.[69] Cookies are further used to support Yahoo's targeting of content and advertising and to associate users, devices, and accounts with each other or with those in a similar location, such as in the same household.[70] Yahoo's use of a unique identifier with its cookies allows it to track users across the internet and across different devices.[71] The purpose of Yahoo Inc.'s cookies and the data they collect is to track users and target them with advertisements—the sale of which Yahoo uses to generate revenues.

92. The **pixel.rubiconproject.com** domain is associated with the Rubicon Project, an advertising exchange platform owned by Magnite, Inc.[72] Rubicon Project operates as a Supply-Side Platform (SSP), enabling website publishers to sell their advertising inventory through real-time bidding auctions. Its cookies are used to assign unique identifiers to users, collect data on their browsing behavior (including IP address, location, and websites visited), and facilitate the exchange of this user data with various ad services.[73] This process, known as cookie syncing,

---

68 https://cookiepedia.co.uk/host/yahoo.com.

69 https://legal.yahoo.com/us/en/yahoo/privacy/topics/cookies/index.html#:~:text=When%20you%20log%20in%20to,or%20device%20you%20are%20using.

70 *Id.*

71 *Id.*

72 *See* Platform Cookie Policy - Magnite, accessed September 26, 2025, https://www.magnite.com/legal/platform-cookie-policy/.

73 *See id.*; *See also* User Choice Portal | Manage Your Privacy Preferences with Magnite, accessed September 26, 2025, https://www.magnite.com/legal/user-choice-portal/.

allows advertisers to identify and bid on ad impressions to target specific users across the web, forming a foundational component of the programmatic advertising ecosystem.[74]

93. The **dsum-sec.casalemedia.com** domain is associated with Casale Media, a digital advertising platform owned by Index Exchange, Inc. Casale Media operates as part of an ad exchange network.[75] Casale Media's cookies are used to collect data about users' website visits and online behavior, including the number of visits, time spent on sites, and pages loaded.[76] This information is used to build user profiles for the purpose of delivering targeted advertising.[77] The platform enables advertisers to segment audiences and optimize ad relevance by tracking users across multiple websites within its network, and its cookies can also be used for functions like frequency capping to limit the number of times a user is shown the same advertisement.[78]

94. The **us-u.openx.net** domain is associated with OpenX Technologies, Inc., a digital advertising technology company that operates a programmatic ad exchange.[79] OpenX uses cookies to facilitate the buying and selling of digital advertising. These cookies assign unique online identifiers to users, which are used to collect data across different websites about their online activity, browsing history, and inferred interests.[80] This information enables interest-based advertising, allowing advertisers to target specific users with relevant ads. The platform also uses cookies for ad delivery management, such as controlling ad frequency, measuring campaign performance, and syncing user identifiers with other advertising partners.[81]

95. The **bluekai.com** domain is associated with BlueKai, a data management and advertising platform acquired and operated by Oracle Corporation as part of Oracle Data Cloud.

---

74 *See id.*
75 *See* https://www.indexexchange.com/about/.
76 *See* https://www.indexexchange.com/privacy/exchange-platform-privacy-policy/.
77 *Id.*
78 *Id.*
79 *See* https://www.openx.com/publishers/ad-exchange/.
80 *See* https://www.openx.com/privacy-center/ad-exchange-privacy-policy/.
81 *See id.*

Oracle's documentation explains that websites using BlueKai can track website visitors and transmit visitor-behavior data to BlueKai, including information reflecting a visitor's interests and location.[82] Oracle further explains that BlueKai uses cookies and unique Cookie IDs to associate information collected about a browser with a profile, and that those profiles may be assigned to interest segments used for targeted advertising.[83] BlueKai cookies therefore enable Oracle to recognize users, collect information concerning their interactions with websites, associate that information with user profiles and interest segments, and facilitate interest-based advertising.

96. The **<u>stackadapt.com</u>** domain is associated with StackAdapt Inc., a digital advertising technology company that operates a platform for programmatic and targeted advertising. StackAdapt's own terms define the "StackAdapt Pixel" as proprietary tracking technology that collects data regarding a user's actions on a client website or interactions with an advertisement, and define "StackAdapt IDs" as unique identifiers assigned to users who interact with client websites.[84] StackAdapt further states that it processes online identifiers, including IP addresses, cookie IDs, and device IDs, as well as referral URLs, user-agent information, and information regarding consumers' interactions with websites, applications, and advertisements.[85] StackAdapt uses this information for marketing, cross-context behavioral and targeted

---

[82] Oracle Data Cloud Privacy Policy (available at https://www.oracle.com/legal/privacy/marketing-cloud-data-cloud-previous-privacy-policy-021318-rw/).

[83] *Id.*; Oracle Help Center: Creating Visitor Data Assets (available at https://docs.oracle.com/en/middleware/webcenter/sites/12.2.1.4/develop/creating-visitor-data-assets.html); *see also* Oracle Data Services Digital Audiences Service Descriptions (available at https://www.oracle.com/contracts/docs/odc-digital-audiences-sd-4813206.pdf).

[84] StackAdapt Platform Terms of Use (https://www.stackadapt.com/legal-document-centre/terms-of-use); *see also* StackAdapt Data Processing Addendum (available at https://www.stackadapt.com/legal-document-centre/data-processing-addendum); StackAdapt Platform and Services Privacy Policy (available at https://www.stackadapt.com/legal-document-centre/platform-and-services-privacy-policy).

[85] *Id.*

advertising, and measurement, including to create and maintain user profiles, tailor advertising content, and track advertising campaign performance and user behavior.[86]

97. Collectively, these cookies allow the Third Parties to obtain and store at least the following user data: (i) browsing history, (ii) visit history, (iii) website interactions, (iv) demographic information, (v) interests and preferences, (vi) shopping behaviors, (vii) device information, (viii) referring URLs, (ix) session information, (x) user identifiers, and/or (xi) geolocation data—including whether a user is located in California.

**D. The Third Parties Intercept User Communications While in Transit.**

98. On information and belief, the Third Parties intercept user communications while those communications are in transit from consumers' browsers to Defendant's Website. The Third Parties operate large-scale data ingestion systems designed to receive, read, and act upon incoming data streams in real time, as the data is transmitted over the network, before it is committed to storage. As the user data is transmitted over the wire, it is transmitted as a raw payload that cannot be used until the Third Party reads and processes it using at least the steps described below. These steps necessarily require contemporaneous access to the contents of the communications while they are in transit.

99. First, the Third Parties must read the data in real time in order to ***transform*** it into a usable format for subsequent processing. Transforming, for example, may involve converting long HTML-encoded strings and decoding them to a format such as Unicode Transformation Format, which is more amenable to subsequent processing.

100. Second, the Third Parties read the data in real time in order to ***deduplicate*** events transmitted through multiple channels. Most websites transmit the same user interaction twice: both directly from the user's device and separately through a server-to-server API, to ensure

86 *Id.*

reliability.[87] Third Parties' platforms encourage this redundant configuration and automatically compare identifiers contained within the transmitted data—such as event identifiers and device identifiers—to determine whether multiple transmissions correspond to the same user action.[88] This deduplication occurs as the communications are received, before they are stored.

101. Third, the Third Parties read and analyze incoming communications in real time to ***validate*** and ***filter*** the data, including to detect invalid, malicious, or anomalous transmissions and to determine whether the data complies with internal processing rules. These determinations must be made immediately upon receipt of the communication in order for the Third Parties' systems to function.

102. Fourth, the Third Parties perform real-time ***analytics*** on user communications to determine their meaning and significance. This processing is used to interpret the data, associate it with particular users or devices, and to determine what real-time events or actions should be taken in response, such as triggering advertising delivery, notifications, or other automated responses. This step typically involves applying artificial intelligence and machine learning algorithms to the data. These determinations occur while the data is in motion, prior to final storage.

103. To accomplish each of the functions described above, the Third Parties employ real-time stream processing platforms specifically designed to operate on data "in flight"—that is, after it is transmitted from a user's browser but before it is committed to the Third Parties' storage. Examples of such platforms include Apache Flink, Kafka, and Amazon Kinesis. Industry

---

[87] For example, Google's server-to-server API is the **Google Ads Conversion API**. Facebook's is the **Meta Conversions API**. On information and belief, each of the Third Parties uses a server-to-server API to collect user data.

[88] For example, Facebook recommends that websites use a "redundant setup" whereby "advertisers implement the Conversions API alongside their Meta Pixel." *See* "Handling Duplicate Pixel and Conversions API Events," available at https://developers.facebook.com/docs/marketing-api/conversions-api/deduplicate-pixel-and-server-events. Facebook confirms that its system automatically deduplicates events using various parameters included with the data, such as "event_id," "event_name," "fbp," and "external_id." *Id.*

documentation confirms that these systems are designed to read, transform, analyze, and act upon data streams as they are received.

104. For example, Meta (formerly Facebook) has publicly described its proprietary real-time stream processing platform that ingests data transmitted from users' devices and websites, applies real-time transformations and personalization, and only thereafter stores the data in backend data warehouses, as illustrated in the following diagram created by Facebook:[89]

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**




105. As the diagram confirms, the data is sent from consumers' "Devices" and from the "Web," and then goes through the Stream Processing Pipelines ***before*** being stored in the data "Warehouse."

106. Facebook's Stream Processing Pipelines perform a wide variety of real-time analytics, transformations, and AI and machine learning on the data prior to storage:[90]

---

[89] XStream: Stream Processing Platform at Facebook (video) at 1:07 (available at https://www.youtube.com/watch?v=DNI54vc1ALQ).
[90] *Id.* at 2:05.




107. As the diagram confirms, Facebook does not merely store incoming data for later review; rather, before the data is stored, Facebook contemporaneously reads and processes it—including by reading the data, cleaning it, applying "real-time personalization" to associate it with a particular user, and analyzing its contents as necessary to generate real-time responses.

108. On information and belief, the other Third Parties also use ingest-phase processing platforms that perform real-time analytics and filtering on incoming data streams before storage. For example, Google developed MillWheel, an internal stream processing system, as well as Flume/FlumeJava, which evolved into Google Cloud Dataflow.[91] Google Cloud Dataflow enables Google to perform many functions on real-time data at the "Ingest" phase, before it is stored.[92] Google, which sells Dataflow to third party developers for use with their own products, states that Dataflow is used "to create data pipelines that read from one or more sources, ***transform the data***, and write the data to a destination."[93] One use for Dataflow is the "[r]eal-time machine learning

---

[91] *See, e.g.*, Google Cloud Blog, "How cloud batch and stream data processing works" (August 2020), https://cloud.google.com/blog/products/data-analytics/how-cloud-batch-and-stream-data-processing-works.
[92] Google Cloud Blog, "BigQuery explained: An overview of BigQuery's architecture" (September 2, 2020), https://cloud.google.com/blog/products/data-analytics/new-blog-series-bigquery-explained-overview.
[93] Google Cloud Documentation, "Dataflow overview," https://docs.cloud.google.com/dataflow/docs/overview (emphasis added).

(ML) analysis of streaming data."[94] Google confirms that Dataflow is "suitable for more advanced applications, such as real-time streaming analytics."[95]

109. Microsoft's Clarity also uses real-time stream processing software, which "processes millions of user sessions every day."[96] Although not as much is publicly disclosed about Microsoft's system, Microsoft confirms that the real-time data "is then sent to Clarity's backend, where it flows through a complex processing pipeline ***before*** ultimately being stored in ClickHouse—the powerful database that fuels Clarity's dashboards and visual reporting."[97]

110. Accordingly, the Third Parties' platforms do not operate as passive recipients that merely record user communications. Instead, they function as active interceptors that contemporaneously read and process the contents of user communications—including the Private Communications—by transforming, deduplicating, validating, filtering and analyzing in real time while those communications are in transit between the user's browser and Defendant's Website.

**E. The Signaling and Addressing Information Intercepted by the Third Parties.**

111. The "signaling" and "addressing" information captured and recorded by the Third Parties includes TCP and/or UDP port numbers associated with outgoing communications initiated by Plaintiffs' and Class Members' browsers and devices. In the context of Internet Protocol (IP) networking, port numbers function as sub-addresses that direct traffic to specific software processes. By recording these port numbers, the Third Parties identify and distinguish specific network connections and the communicating endpoints involved (e.g., a Plaintiff's or Class Member's IP address and TCP/UDP source port communicating with a Third Party's destination IP address and destination port such as 443). These port numbers constitute addressing

---

[94] *Id.*
[95] *Id.*
[96] Clarity Blog, "Building a Scalable Analytics Platform: Why Microsoft Clarity Chose ClickHouse," https://clarity.microsoft.com/blog/why-microsoft-clarity-chose-clickhouse/.
[97] *Id.* (emphasis added).

information associated with the communications initiated by Plaintiffs' and Class Members' browsers and devices and fall within the "instruments" and "facilities" contemplated by California Penal Code § 638.50(b).

112. The "signaling" information also includes protocol-level metadata recorded by the Third Parties during connection establishment and session management, such as the initiation and acceptance of TCP connections and the TLS handshake and negotiation metadata used to establish HTTPS sessions. This signaling information is transmitted by Plaintiffs' and Class Members' devices to initiate, coordinate, and manage electronic communications with the Third Parties. Because this metadata enables management of the connection rather than the substance of the message, it constitutes record information regarding the characteristics of the communication, rather than communication content, and falls squarely within the statutory definition of a pen register.

113. Additionally, the Third Parties record HTTP request header metadata, such as the "Host" header and connection-management headers (e.g., "Connection" in HTTP/1.1), which function as digital "dialing" information. Just as a traditional pen register records the number dialed to reach a destination, these headers identify the intended web origin (via "Host") and specify how the client requests the connection be handled for that request (e.g., whether to keep the connection open). This header information is transmitted as part of the Plaintiffs' and Website users' HTTP requests and, together with the destination network address and port, enables the receiving Third Party to identify and log the destination and handling characteristics of Plaintiffs' and Website users' communications, separate from any underlying user input or message content.

114. Finally, the Third Parties' receiving infrastructure (e.g., servers, edge services, and/or load balancers) observes and records network-level and transport-level routing and addressing metadata associated with communications initiated by Plaintiffs' and Website users'

browsers and devices. This metadata includes destination IP addresses, port identifiers (such as 443 for HTTPS), and related connection and session attributes, including connection initiation and termination timestamps, connection duration, and identifiers such as the protocol used (TCP or UDP), the source IP address, the source port, the destination IP address, and the destination port. The Third Parties use this information in real time to identify and log the origin and destination endpoints of Plaintiffs' and Website users' electronic communications and the characteristics of those connections, separate from any substantive "message" or "contents" carried at the higher-level Application layer.

**F. The Private Communications Collected are Valuable.**

115. As part of its regular course of business, Defendant targets California consumers by causing the Third Parties to extract, collect, maintain, distribute, and exploit for Defendant's and the Third Parties' profit all of the Private Communications transferred by the cookies which Defendant causes to be placed on Plaintiffs' and other California Website users' devices without their knowledge or consent. Defendant knew the location of consumers like Plaintiffs and the Class members either prior to or shortly after causing the Third Parties to use cookies on their devices.

116. The Private Communications tracked and collected through cookies on the Website are valuable to Defendant and the Third Parties. Defendant uses this data to measure and optimize marketing campaigns, evaluate website design and product placement, and target specific users or groups of users with advertising. For example, Defendant can identify California users who visit webpages related to particular UFC content and then target those users with advertisements for similar content both on the Website and across unrelated third-party websites.

117. Data reflecting users' browsing activity allows Defendant to identify behavioral patterns, preferences, and interests relating to Defendant's events and content. At scale, this data

enables Defendant to assess trends within its audience and the broader mixed martial arts and sporting event market. Defendant monetizes this data by leveraging it to increase user engagement, advertising effectiveness, and overall revenue.

118. The value of the Private Communications tracked and collected by the Third Parties using cookies on the Website can be quantified. Legal scholars observe that "[p]ersonal information is an important currency in the new millennium."[98] Indeed, "[t]he monetary value of personal data is large and still growing, and corporate America is moving quickly to profit from the trend." *Id*. "Companies view this information as a corporate asset and have invested heavily in software that facilitates the collection of consumer information." *Id*.

119. Numerous empirical studies quantify the appropriate value measure for personal data. Generally, the value of personal data is measured as either the consumer's willingness to accept compensation to sell her data or the consumer's willingness to pay to protect her information.

120. By falsely representing consumers' ability to decline non-required cookies, and by aiding, agreeing with, employing, permitting, or otherwise enabling the Third Parties to collect users' Private Communications, Defendant unjustly enriches itself at the expense of consumer privacy and autonomy. Defendant deprives consumers of the ability to decide whether, and on what terms, their data may be monetized.

## <u>PLAINTIFFS' EXPERIENCES</u>

**Plaintiff Shipley**

121. Plaintiff Shipley visited the Website on one or more occasions during the last four years to seek and obtain information about UFC events and related mixed martial arts content while located in California. The Website provides information regarding, among other things,

---

[98] *See* Paul M. Schwartz, *Property, Privacy and Personal Data*, 117 Harv. L. Rev. 2055, 2056–57 (2004).

upcoming and past UFC events, fight cards and matchups, UFC fighters, fight schedules and results, rankings, tickets, how and where to watch UFC events, and videos and other fight-related content. Plaintiff Shipley visited the Website as a consumer interested in obtaining information about UFC events and related content.

122. Plaintiff Shipley's visits to the Website were consistent with an ordinary Website user's visits seeking information about Defendant's events and related content. Specifically, Plaintiff Shipley is not a consumer advocate, a "tester," or a compliance auditor who visited the Website to test or evaluate Defendant's privacy practices.

123. When Plaintiff Shipley visited the Website, it immediately detected that she was a visitor in California and presented her with Defendant's popup cookie consent banner, which provided the option to select the "Reject All" cookies button. Plaintiff Shipley viewed Defendant's representation on the popup cookie consent banner that, "By clicking 'Accept All Cookies', you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts." Plaintiff Shipley also viewed Defendant's additional representation that users could, rather than "Accept All Cookies[,]" instead "Reject All" cookies.

124. Plaintiff Shipley selected and clicked the "Reject All" cookies button. Plaintiff Shipley believed that selecting the "Reject All" cookies button on the popup cookie consent banner found on the Website would allow her to opt out of, decline, and/or reject **all cookies** and other tracking technologies (inclusive of those cookies that cause the disclosure of tracking data to "analyze site usage, and assist in [Defendant's] marketing efforts").

125. In selecting the "Reject All" cookies button, Plaintiff Shipley gave Defendant notice that she did not consent to the use or placement of cookies and tracking technologies while browsing the Website. Further, Plaintiff Shipley specifically rejected, based on Defendant's

representations, those cookies used to "analyze site usage, and assist in [Defendant's] marketing efforts" and share information with third parties. In reliance on these representations and promises, only then did Plaintiff Shipley continue browsing the Website.

126. Even before the popup cookie consent banner appeared on the screen, Defendant nonetheless caused cookies and tracking technologies, including those used to "analyze site usage, and assist in [Defendant's] marketing efforts[,]" to be placed on Plaintiff Shipley's device and/or intercepted by the Third Parties along with user data, without her knowledge. Accordingly, the popup cookie consent banner's representation to Plaintiff Shipley that she could reject the use and/or placement of "All" cookies and tracking technologies while she browsed the Website was false. Contrary to what Defendant made Plaintiff Shipley believe, she did not have a choice about whether third-party cookies would be placed on her device and/or intercepted by the Third Parties along with her user data; rather, Defendant had already caused that to happen.

127. Then, as Plaintiff Shipley continued to browse the Website in reliance on the promises Defendant made in the cookie consent banner, and despite Plaintiff Shipley's clear rejection of the use and/or placement of all such cookies and tracking technologies, Defendant nonetheless continued to cause the placement and/or transmission of cookies from the Third Parties, along with user data, on her device, including cookies involved in analyzing site usage and assisting in Defendant's marketing efforts. In doing so, Defendant permitted the Third Parties to track and collect Plaintiff Shipley's Private Communications as Plaintiff Shipley browsed the Website.

128. Defendant's representations that consumers could "Reject All" cookies while Plaintiff Shipley and users browsed the Website—or at a minimum, reject cookies involved in analyzing site usage and assisting in Defendant's marketing efforts—were untrue. Had Plaintiff Shipley known this fact, she would not have used the Website. Moreover, Plaintiff Shipley

reviewed the popup cookie consent banner prior to using the Website. Had Defendant disclosed that it would continue to cause cookies and tracking technologies to be stored on consumers' devices even after they choose to reject all cookies, Plaintiff Shipley would have noticed it and would not have used the Website or, at a minimum, she would have interacted with the Website differently.

129. Plaintiff Shipley continues to desire to browse content featured on the Website. Plaintiff Shipley would like to browse websites that do not misrepresent that users can reject all cookies and tracking technologies. If the Website were programmed to honor users' requests to reject all cookies and tracking technologies, Plaintiff Shipley would likely browse the Website again in the future, but will not do so until then. Plaintiff Shipley regularly visits websites that feature content similar to that of the Website. Because Plaintiff Shipley does not know how the Website is programmed, which can change over time, and because she does not have the technical knowledge necessary to test whether the Website honors users' requests to reject all cookies and tracking technologies, Plaintiff Shipley will be unable to rely on Defendant's representations when browsing the Website in the future absent an injunction that prohibits Defendant from making misrepresentations on the Website. The only way to determine what network traffic is sent to third parties when visiting a website is to use a specialized tool such as Chrome Developer Tools. As the name suggests, such tools are designed for use by "developers" (i.e., software developers), whose specialized training enables them to analyze the data underlying the HTTP traffic to determine what data, if any, is being sent to whom. Plaintiff Shipley is not a software developer and has not received training with respect to HTTP network calls.

**Plaintiff Namata**

130. Plaintiff Namata visited the Website on one or more occasions during the last four years to seek and obtain information about UFC events and related mixed martial arts content

while located in California. The Website provides information regarding, among other things, upcoming and past UFC events, fight cards and matchups, UFC fighters, fight schedules and results, rankings, tickets, how and where to watch UFC events, and videos and other fight-related content. Plaintiff Namata visited the Website as a consumer interested in obtaining information about UFC events and related content.

131. Plaintiff Namata's visits to the Website were consistent with an ordinary Website user's visits seeking information about Defendant's events and related content. Specifically, Plaintiff Namata is not a consumer advocate, a "tester," or a compliance auditor who visited the Website to test or evaluate Defendant's privacy practices.

132. When Plaintiff Namata visited the Website, it immediately detected that he was a visitor in California and presented him with Defendant's popup cookie consent banner, which provided the option to select the "Reject All" cookies button. Plaintiff Namata viewed Defendant's representation on the popup cookie consent banner that, "By clicking 'Accept All Cookies', you agree to the storing of cookies on your device to enhance site navigation, analyze site usage, and assist in our marketing efforts." Plaintiff Namata also viewed Defendant's additional representation that users could, rather than "Accept All Cookies[,]" instead "Reject All" cookies.

133. Plaintiff Namata selected and clicked the "Reject All" cookies button. Plaintiff Namata believed that selecting the "Reject All" cookies button on the popup cookie consent banner found on the Website would allow him to opt out of, decline, and/or reject **all cookies** and other tracking technologies (inclusive of those cookies that cause the disclosure of tracking data to "analyze site usage, and assist in [Defendant's] marketing efforts").

134. In selecting the "Reject All" cookies button, Plaintiff Namata gave Defendant notice that he did not consent to the use or placement of cookies and tracking technologies while

browsing the Website. Further, Plaintiff Namata specifically rejected, based on Defendant's representations, those cookies used to "analyze site usage, and assist in [Defendant's] marketing efforts" and share information with third parties. In reliance on these representations and promises, only then did Plaintiff Namata continue browsing the Website.

135. Even before the popup cookie consent banner appeared on the screen, Defendant nonetheless caused cookies and tracking technologies, including those used to "analyze site usage, and assist in [Defendant's] marketing efforts[,]" to be placed on Plaintiff Namata's device and/or intercepted by the Third Parties along with user data, without his knowledge. Accordingly, the popup cookie consent banner's representation to Plaintiff Namata that he could reject the use and/or placement of "All" cookies and tracking technologies while he browsed the Website was false. Contrary to what Defendant made Plaintiff Namata believe, he did not have a choice about whether third-party cookies would be placed on his device and/or intercepted by the Third Parties along with his user data; rather, Defendant had already caused that to happen.

136. Then, as Plaintiff Namata continued to browse the Website in reliance on the promises Defendant made in the cookie consent banner, and despite Plaintiff Namata's clear rejection of the use and/or placement of all such cookies and tracking technologies, Defendant nonetheless continued to cause the placement and/or transmission of cookies from the Third Parties, along with user data, on his device, including cookies involved in analyzing site usage and assisting in Defendant's marketing efforts. In doing so, Defendant permitted the Third Parties to track and collect Plaintiff Namata's Private Communications as Plaintiff Namata browsed the Website.

137. Defendant's representations that consumers could "Reject All" cookies while Plaintiff Namata and users browsed the Website—or at a minimum, reject cookies involved in analyzing site usage and assisting in Defendant's marketing efforts—were untrue. Had Plaintiff

Namata known this fact, he would not have used the Website. Moreover, Plaintiff Namata reviewed the popup cookie consent banner prior to using the Website. Had Defendant disclosed that it would continue to cause cookies and tracking technologies to be stored on consumers' devices even after they choose to reject all cookies, Plaintiff Namata would have noticed it and would not have used the Website or, at a minimum, he would have interacted with the Website differently.

138. Plaintiff Namata continues to desire to browse content featured on the Website. Plaintiff Namata would like to browse websites that do not misrepresent that users can reject all cookies and tracking technologies. If the Website were programmed to honor users' requests to reject all cookies and tracking technologies, Plaintiff Namata would likely browse the Website again in the future, but will not do so until then. Plaintiff Namata regularly visits websites that feature content similar to that of the Website. Because Plaintiff Namata does not know how the Website is programmed, which can change over time, and because he does not have the technical knowledge necessary to test whether the Website honors users' requests to reject all cookies and tracking technologies, Plaintiff Namata will be unable to rely on Defendant's representations when browsing the Website in the future absent an injunction that prohibits Defendant from making misrepresentations on the Website. The only way to determine what network traffic is sent to third parties when visiting a website is to use a specialized tool such as Chrome Developer Tools. As the name suggests, such tools are designed for use by "developers" (i.e., software developers), whose specialized training enables them to analyze the data underlying the HTTP traffic to determine what data, if any, is being sent to whom. Plaintiff Namata is not a software developer and has not received training with respect to HTTP network calls.

## CLASS ALLEGATIONS

139. Plaintiffs bring this Class Action Complaint on behalf of themselves and a proposed class of similarly situated persons, pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following group of similarly situated persons, defined as follows:

> **Class**: All persons who browsed the Website in the State of California after clicking or selecting the "Reject All" button in the popup cookie consent banner.

140. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

141. **Numerosity:** Plaintiffs do not know the exact size of the Class, but they estimate that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

142. **Common Questions Predominate:** This action involves common questions of law and fact to the Class because each class member's claim derives from the same unlawful conduct that led them to believe that Defendant would not cause third-party cookies to be placed on their browsers and devices and/or intercepted by third parties along with user data, after Class members chose to reject all cookies and tracking technologies on the Website, nor would Defendant permit third parties to track and collect Class members' Private Communications as Class members browsed the Website.

143. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

a. Whether Defendant's actions violate California laws invoked herein; and

b. Whether Plaintiffs and Class members are entitled to damages, restitution, injunctive and other equitable relief, reasonable attorneys' fees, prejudgment interest and costs of this suit.

144. **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, Plaintiffs, like the other Class members, visited the Website, rejected "All" cookies, and had their confidential Private Communications intercepted by the Third Parties.

145. **Adequacy of Representation:** Plaintiffs will fairly and adequately protect the interests of all Class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests in conflict with, or antagonistic to, the interests of Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. By prevailing on their claims, Plaintiffs will establish Defendant's liability to all Class members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

146. **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### First Cause of Action: Invasion of Privacy

147. Plaintiffs reallege and incorporate the paragraphs of this Complaint as if set forth herein.

148. To plead an invasion of privacy claim, Plaintiffs must show an invasion of (i) a legally protected privacy interest; (ii) a reasonable expectation of privacy in the circumstances; and (iii) conduct by Defendant constituting a serious invasion of privacy.

149. Defendant has intruded upon the following legally protected privacy interests of Plaintiffs and Class members: (i) the California Invasion of Privacy Act, as alleged herein; (ii) the California Constitution, which guarantees Californians the right to privacy; (iii) the California Wiretap Acts as alleged herein; (iv) Cal. Penal Code § 484(a), which prohibits the knowing theft or defrauding of property "by any false or fraudulent representation or pretense;" and (v) Plaintiffs' and Class members' Fourth Amendment right to privacy.

150. Plaintiffs and Class members had a reasonable expectation of privacy under the circumstances, as Defendant affirmatively promised users they could "Reject All" cookies and tracking technologies before proceeding to browse the Website. Plaintiffs and other Class

members directed their electronic devices to access the Website and, when presented with the popup cookies consent banner on the Website, Plaintiffs and Class members rejected "All" cookies and reasonably expected that their rejection of all cookies and tracking technologies would be honored. That is, they reasonably believed that Defendant would not permit the Third Parties to store and send cookies and/or use other such tracking technologies on their devices while they browsed the Website. Plaintiffs and Class members also reasonably expected that, if they rejected "All" such cookies and/or tracking technologies, Defendant would not permit the Third Parties to track and collect Plaintiffs' and Class members' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, on the Website.

151. Such information is "personal information" under California law, which defines personal information as including "Internet or other electronic network activity information," such as "browsing history, search history, and information regarding a consumer's interaction with an internet website, application, or advertisement." Cal. Civ. Code § 1798.140.

152. Defendant, in violation of Plaintiffs' and other Class members' reasonable expectation of privacy and without their consent, permits the Third Parties to use cookies and other tracking technologies to collect, track, and compile users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data—including whether a user is located in California. The data that Defendant allowed third parties to collect enables the Third Parties to—and they in fact do—create consumer profiles containing detailed information about a consumer's behavior, preferences, and demographics; create audience segments based on shared

traits (such as Millennials, Californians, tech enthusiasts, etc.); and perform targeted advertising and marketing analytics. Further, the Third Parties share user data and/or the user profiles to unknown parties to further their financial gain. The consumer profiles are and can be used to further invade Plaintiffs' and users' privacy, by allowing third parties to learn intimate details of their lives, and target them for advertising and other purposes, as described herein, thereby harming them through the abrogation of their autonomy and their ability to control dissemination and use of information about them.

153. Defendant's actions constituted a serious invasion of privacy in that it invaded a zone of privacy protected by the Fourth Amendment (i.e., one's personal communications), and violated criminal laws on wiretapping and invasion of privacy. These acts constitute an egregious breach of social norms that is highly offensive.

154. Defendant's intrusion into Plaintiffs' and Class members' privacy was also highly offensive to a reasonable person.

155. Defendant lacked a legitimate business interest in causing the placement and/or transmission of third-party cookies along with user data that allowed the Third Parties to track, intercept, receive, and collect Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, without their consent.

156. Plaintiffs and Class members have been damaged by Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

157. Plaintiffs and Class members seek appropriate relief for that injury, including but not limited to, damages that will compensate them for the harm to their privacy interests as well

as disgorgement of profits made by Defendant as a result of its intrusions upon Plaintiffs' and Class members' privacy.

158. Plaintiffs and Class members seek punitive damages because Defendant's actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiffs and Class members and made in conscious disregard of Plaintiffs' and Class members' rights and Plaintiffs' and Class members' rejection of the Website's use of "All" cookies. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

**Second Cause of Action: Intrusion Upon Seclusion**

159. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

160. To assert a claim for intrusion upon seclusion, Plaintiffs must plead (i) that Defendant intentionally intruded into a place, conversation, or matter as to which Plaintiffs had a reasonable expectation of privacy; and (ii) that the intrusion was highly offensive to a reasonable person.

161. By permitting third-party cookies to be stored on consumers' devices without consent, which caused the Third Parties to track and collect Plaintiffs' and Class members' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, in violation of Defendant's representations otherwise in the popup cookie consent banner, Defendant intentionally intruded upon the solitude or seclusion of Website users. Defendant effectively placed the Third Parties in the middle of communications to which they were not invited, welcomed, or authorized.

162. The Third Parties' tracking and collecting of Plaintiffs' and Class members' Private Communications on the Website using third-party cookies that Defendant caused to be

stored on users' devices—and to be intercepted by the Third Parties—was not authorized by Plaintiffs and Class members, and, in fact, those Website users specifically chose to "Reject All" cookies.

163. Plaintiffs and the Class members had an objectively reasonable expectation of privacy surrounding their Private Communications on the Website based on Defendant's promise that users could "Reject All" cookies, as well as state criminal and civil laws designed to protect individual privacy.

164. Defendant's intentional intrusion into Plaintiffs' and other users' Private Communications would be highly offensive to a reasonable person given that Defendant represented that Website users could "Reject All" cookies when, in fact, Defendant caused such third-party cookies to be stored on consumers' devices and browsers, and to be intercepted by the Third Parties, even when consumers rejected all such cookies. Indeed, Plaintiffs and Class members reasonably expected, based on Defendant's false representations, that when they rejected "All" cookies and tracking technologies, Defendant would not cause such third-party cookies to be stored on their devices or permit the Third Parties to obtain their Private Communications on the Website, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data—including whether a user is located in California.

165. Defendant's conduct was intentional and intruded on Plaintiffs' and users' Private Communications on the Website.

166. Plaintiffs and Class members have been damaged by Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

167. Plaintiffs and Class members seek appropriate relief for that injury, including but not limited to, damages that will compensate them for the harm to their privacy interests as well as disgorgement of profits made by Defendant as a result of its intrusions upon Plaintiffs' and Class members' privacy.

168. Plaintiffs and Class members seek punitive damages because Defendant's actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiffs and Class members and made in conscious disregard of Plaintiffs' and Class members' rights and Plaintiffs' and Class members' rejection of the Website's use of "All" cookies. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

**Third Cause of Action: Wiretapping in Violation of the California Invasion of Privacy Act (California Penal Code § 631)**

169. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

170. California Penal Code § 631(a) provides, in pertinent part:

> "Any person [i] who, by means of any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or [ii] [who] in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars . . . ."

171. Defendant is a "person" within the meaning of California Penal Code § 631.

172. The Third Parties' cookies—as well as the software code of the Third Parties responsible for placing the cookies and transmitting data from user devices to the Third Parties—constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA (and, even if they do

not, Defendant's deliberate and purposeful scheme that facilitated the interceptions falls under the broad statutory catch-all category of "any other manner").

173. Each of the Third Parties is a separate legal entity that offers software as a service and not merely a passive device. Further, the Third Parties had the capability to use the wiretapped information for their own purposes and, as alleged above, they did in fact use the wiretapped information for their own business purposes. Accordingly, the Third Parties were third parties to any communication between Plaintiffs and Class members, on the one hand, and Defendant, on the other.

174. Under § 631(a), Defendant must show it had the consent of all parties to a communication.

175. At all relevant times, the Website caused Plaintiffs' and Class members' browsers to store the Third Parties' cookies and to transmit those cookies alongside Private Communications—including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data—to the Third Parties without Plaintiffs' and Class members' consent. By configuring the Website in this manner, Defendant willfully aided, agreed with, employed, permitted, or otherwise caused the Third Parties to wiretap Plaintiffs and Class members using the Third Parties' cookies and to accomplish the wrongful conduct alleged herein.

176. At all relevant times, by their cookies and corresponding software code, the Third Parties willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiffs and Class members, on the one hand, and Defendant, on

the other, while the electronic communications were in transit or were being sent from or received at any place within California.

177. The Private Communications of Plaintiffs and Class members, on the one hand, and Defendant, on the other, that the Third Parties automatically intercepted directly communicate the Website user's affirmative decisions, actions, choices, preferences, and activities, which constitute the "contents" of electronic communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data—including whether a user is located in California.

178. At all relevant times, the Third Parties used or attempted to use the Private Communications automatically intercepted by their cookie tracking technologies for their own purposes.

179. Plaintiffs and Class members did not provide their prior consent to the Third Parties' intentional access, interception, reading, learning, recording, collection, and usage of Plaintiffs' and Class members' electronic communications. Nor did Plaintiffs and Class members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling the Third Parties' conduct. On the contrary, Plaintiffs and Class members expressly declined to allow Third Parties' cookies and tracking technologies to access, intercept, read, learn, record, collect, and use Plaintiffs' and Class members' electronic communications by choosing to reject "All" cookies in the consent banner.

180. The wiretapping of Plaintiffs and Class members occurred in California, where Plaintiffs and Class members accessed the Website and where the Third Parties—as caused by Defendant—routed Plaintiffs' and Class members' electronic communications to Third Parties' servers. Among other things, the cookies, as well as the software code responsible for placing the

cookies and transmitting them and other Private Communications to the Third Parties, resided on Plaintiffs' California-located devices. In particular, the user's California-based devices, after downloading the software code from the Third Parties' servers, (i) stored the code onto the user's disk; (ii) converted the code into machine-executable format; and (iii) executed the code, causing the transmission of data (including cookie data) to and from the Third Parties.

181. Plaintiffs and Class members have suffered loss by reason of these violations, including, but not limited to, (i) violation of their right to privacy, (ii) loss of value in their Private Communications, (iii) damage to and loss of Plaintiffs' and Class members' property right to control the dissemination and use of their Private Communications, and (iv) loss of their Private Communications to the Third Parties without their consent.

182. Pursuant to California Penal Code § 637.2, Plaintiffs and Class members have been injured by the violations of California Penal Code § 631, and each seeks statutory damages of the greater of $5,000, or three times the amount of actual damages, for each of Defendant's violations of CIPA § 631(a), as well as injunctive relief.

183. Unless enjoined, Defendant will continue to commit the illegal acts alleged herein including, but not limited to, permitting third parties to access, intercept, read, learn, record, collect, and use Plaintiffs' and Class members' electronic Private Communications with Defendant. Plaintiffs, Class members, and the general public continue to be at risk because Plaintiffs, Class members, and the general public frequently use the internet to search for information and content related to UFC mixed martial arts and similar events. Plaintiffs, Class members, and the general public continue to desire to use the internet for that purpose. Plaintiffs, Class members, and the general public have no practical way to know if their request to reject "All" cookies and tracking technologies will be honored and/or whether Defendant will permit third parties to access, intercept, read, learn, record, collect, and use Plaintiffs' and Class

members' electronic Private Communications with Defendant. Further, Defendant has already permitted the Third Parties to access, intercept, read, learn, record, collect, and use Plaintiffs' and Class members' electronic Private Communications with Defendant and will continue to do so unless and until enjoined.

**<u>Fourth Cause of Action</u>: Use of a Pen Register in Violation of the California Invasion of Privacy Act (California Penal Code § 638.51)**

184. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

185. The California Invasion of Privacy Act, codified at Cal. Penal Code §§ 630 to 638, includes the following statement of purpose:

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

186. California Penal Code Section 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

187. A "pen register" is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

188. The Third Parties' cookies and the corresponding software code installed by Defendant on its Website are each "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—including the IP address and

user-agent information—from the electronic communications transmitted by Plaintiffs' and the Class's computers or devices. Cal. Penal Code § 638.50(b).

189. At all relevant times, Defendant caused pen registers (e.g., the Third-Party software code and cookies) to be placed on Plaintiffs' and Class members' browsers and devices. This software code established and maintained network connections between the users' devices and the Third Parties, and also caused cookies, user data and metadata, and addressing and networking information (including, without limitation, IP addresses, port numbers, protocol-level metadata, HTTP request header metadata, and user-agent information), to be intercepted by the Third Parties.

190. Some of the information collected by the Third Parties' cookies and the corresponding software, including IP addresses and user-agent information, does not constitute the content of Plaintiffs' and the Class members' electronic communications with the Website.

191. Plaintiffs and Class members did not provide their prior consent to Defendant's use of third-party cookies and the corresponding software. On the contrary, Plaintiffs and the Class members informed Defendant that they did not consent to the Website's use of third-party cookies by clicking or selecting the "Reject All" button in the cookie consent banner.

192. Defendant did not obtain a court order to install or use the third-party cookies and corresponding software to track and collect Plaintiffs' and Class members' IP addresses and user-agent information.

193. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class members suffered losses and were damaged in an amount to be determined at trial.

194. Pursuant to Penal Code § 637.2(a)(1), Plaintiffs and Class members are also entitled to statutory damages of $5,000 for each of Defendant's violations of § 638.51(a).

## **<u>Fifth Cause of Action</u>: Common Law Fraud, Deceit and/or Misrepresentation**

195. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

196. Defendant fraudulently and deceptively informed Plaintiffs and Class members that they could "Reject All" cookies.

197. However, despite Defendant's representations otherwise, Defendant caused third-party cookies and software code to be stored on consumers' devices, and to be intercepted by the Third Parties alongside Private Communications, even after users clicked or selected the "Reject All" cookies button in the popup cookie consent banner. These cookies and corresponding software code allowed the Third Parties to access, intercept, read, learn, record, collect, and use Plaintiffs' and Class members' Private Communications, even when consumers had previously chosen to "Reject All" cookies.

198. Defendant affirmatively chose to deploy a cookie consent banner governing the collection, sharing, and use of users' Private Communications on the Website.

199. By implementing the cookie banner, Defendant undertook responsibility for ensuring that the banner accurately communicated users' privacy choices and properly effectuated those choices.

200. Defendant and/or its agents configured and managed which technologies loaded and transmitted data before and after a user disabled third-party cookies, including through consent management settings and/or platforms, tag-management rules, and related implementation choices under Defendant's control. On information and belief, Defendant operated, controlled, configured, approved, or maintained settings that permitted the Third Parties' tracking technologies to continue collecting users' Private Communications even after

users selected options indicating their choice to disable and/or reject all cookies and opt out of the collection, use, sale, and/or sharing of their Private Communications.

201. Industry documentation for the consent management platforms and Third Parties' technologies used on the Website explains that website operators, i.e., Defendant, must affirmatively configure consent settings and tag behavior to prevent tracking technologies from firing after users reject cookies. On information and belief, Defendant received, reviewed, or had access to such implementation guidance in deploying the challenged technologies on the Website. On information and belief, Defendant had the ability during the relevant time period to audit, test, configure, disable, or modify the cookie consent banner, consent-management functionality, and Third-Party tracking technologies operating on the Website. Defendant had information available to it demonstrating that users' purported opt-out selections were not being honored and that users' Private Communications continued to be collected and intercepted by the Third Parties notwithstanding Defendant's contrary representations.

202. Defendant also used the Third Parties' analytics, advertising, and reporting dashboards to monitor Website traffic, user behavior, advertising performance, and related engagement metrics generated through the challenged cookie and tracking technologies. Through these dashboards and related reporting tools, Defendant had access to information reflecting that user data continued to be intercepted and processed by the Third Parties notwithstanding users' purported opt-out selections. Defendant routinely reviewed, monitored, and relied upon data generated through the Third Parties' resources for advertising, analytics, personalization, attribution, and/or website performance purposes.

203. Industry standards, privacy frameworks, and applicable statutes and regulations, including California's California Consumer Privacy Act and related regulations, require website operators deploying cookie consent banners to ensure that consent mechanisms function properly

and accurately record and enforce user choices. *See*, *e.g*., California Consumer Privacy Rights Act § 7025(c) (enumerating requirements for businesses that receive an "opt out preference signal."); *id*. § 7101 (business record keeping requirements regarding opt out requests).

204. On information and belief, Defendant knew its representations regarding users' ability to reject "All" cookies and opt out of data sharing were false, lacked any reasonable basis for believing those representations were true, or made those representations carelessly and recklessly despite information available to Defendant demonstrating that users' data continued to be collected and intercepted by the Third Parties after users attempted to opt out.

205. These misrepresentations and omissions were known exclusively to, and actively concealed by Defendant, not reasonably known to Plaintiffs and Class members, and material at the time they were made. Defendant's misrepresentations and omissions concerned material facts that were essential to Plaintiffs' and Class members' decisions whether to use the Website. In misleading Plaintiffs and Class members and not so informing them, Defendant breached its duty to Plaintiffs and Class members. Defendant also gained financially from, and as a result of, its breach.

206. Plaintiffs and Class members relied to their detriment on Defendant's misrepresentations and fraudulent omissions.

207. Plaintiffs and Class members have suffered an injury-in-fact, including the loss of money and/or property, as a result of Defendant's unfair, deceptive, and/or unlawful practices, including the unauthorized interception of their Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, which have value as demonstrated by the use and sale of consumers' browsing activity, as alleged above. Plaintiffs and Class members

have also suffered harm in the form of diminution of the value of their private and personally identifiable information and communications.

208. Defendant's actions caused damage to and loss of Plaintiffs' and Class members' property right to control the dissemination and use of their personal information and communications.

209. Defendant's representation that consumers could reject "All" cookies (including cookies used to "analyze site usage, and assist in [Defendant's] marketing efforts") if they clicked or selected the "Reject All" cookies button was untrue. Again, had Plaintiffs and Class members known these facts, they would not have used the Website. Moreover, Plaintiffs and Class members reviewed the popup cookie consent banner prior to their interactions with the Website. Had Defendant disclosed that it would continue to cause analytics and marketing third- cookies to be stored on Website visitors' devices and/or user information to be shared with third parties even after users chose to reject "All" such cookies, Plaintiffs and Class members would have noticed it and would not have interacted with the Website.

210. By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs and Class members to alter their positions to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs and Class members to, without limitation, use the Website under the mistaken belief that Defendant would not permit third parties to obtain users' Private Communications when consumers chose to reject "All" cookies. As a result, Plaintiffs and the Class provided more personal data than they would have otherwise.

211. Plaintiffs and Class members justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant's conduct.

212. As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and Class members have suffered damages, as alleged above, and are entitled to just compensation, including monetary damages.

213. Plaintiffs and Class members seek punitive damages because Defendant's actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiffs and Class members and made in conscious disregard of Plaintiffs' and Class members' rights and Plaintiffs' and Class members' rejection of the Website's use of "All" cookies. Punitive damages are warranted to deter Defendant from engaging in future misconduct.

**Sixth Cause of Action: Unjust Enrichment**

214. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

215. Defendant created and implemented a scheme to increase its own profits through a pervasive pattern of false statements and fraudulent omissions.

216. Defendant was unjustly enriched as a result of its wrongful conduct, including through its misrepresentation that users could "Reject All" cookies and by permitting the Third Parties to store and transmit cookies on Plaintiffs' and Class members' devices and browsers, which permitted the Third Parties to track and collect users' Private Communications, including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data, even after Class members rejected "All" such cookies.

217. Plaintiffs and Class members' Private Communications have conferred an economic benefit on Defendant.

218. Defendant has been unjustly enriched at the expense of Plaintiffs and Class members, and Defendant has unjustly retained the benefits of its unlawful and wrongful conduct.

219. Defendant appreciated, recognized, and chose to accept the monetary benefits that Plaintiffs and Class members conferred onto Defendant at their detriment. These benefits were the expected result of Defendant acting in its pecuniary interest at the expense of Plaintiffs and Class members.

220. It would be unjust for Defendant to retain the value of Plaintiffs' and Class members' property and any profits earned thereon.

221. There is no justification for Defendant's enrichment. It would be inequitable, unconscionable, and unjust for Defendant to be permitted to retain these benefits because the benefits were procured as a result of its wrongful conduct.

222. Plaintiffs and Class members are entitled to restitution of the benefits Defendant unjustly retained and/or any amounts necessary to return Plaintiffs and Class members to the position they occupied prior to having their Private Communications tracked and collected by the Third Parties.

223. Plaintiffs plead this claim separately, as well as in the alternative, to their other claims, because Plaintiffs lack an adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, reserving all rights, Plaintiffs, on behalf of themselves and the Class members, respectfully request judgment against Defendant as follows:

A. Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B. An award of compensatory damages, including statutory damages where available, to Plaintiffs and Class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, including both pre- and post-judgment interest thereon;

C. An award of punitive damages;

D. An award of nominal damages;

E. An order for full restitution;

F. An order requiring Defendant to disgorge revenues and profits wrongfully obtained;

G. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

H. For reasonable attorneys' fees and the costs of suit incurred; and

I. For such further relief as may be just and proper.

Dated: September 18, 2026

**GUTRIDE SAFIER LLP**

*/s/Seth A. Safier/s/*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiffs